## WILLIS MACKLIN v. THE STATE.

### No. 4305. Decided March 11, 1908.

### 1.—Murder—Charge of Court—Murder in First Degree—Insanity.

Where upon trial for murder the evidence showed a deliberate assassination, there was no error in the court's failure to charge on murder in the second degree; the defense being insanity.

### 2.—Same—Change of Venue—Compurgators.

Where upon trial for murder the application for a change of venue did not comply with the statutes by being supported by the affidavit of at least two credible persons, residents of the county of the prosecution, the same was insufficient, although supported by the affidavit of defendant alleging that the prejudice against him in said county was so great as not to insure him of a fair trial, etc.; the trial judge declining to grant a change of venue of his own motion.

### 3.—Same—Indictment—Legal Holiday.

An indictment otherwise legally returned will not be set aside or quashed for the sole reason that the same was returned on a legal holiday. Following Dunlap v. State, 9 Tex. Crim. App., 179.

### 4.—Same—Race Discrimination—Jury Commissioners.

Where upon trial for murder the defendant raised the question of race discrimination against the negro race, etc., and the testimony showed that neither the judge nor the jury commissioners whom he appointed showed any such race discrimination in selecting the grand and petit juries, and that they did not leave off of the juries any person because he was a negro, defendant's motion on this ground was properly overruled. Following Thomas v. State, 49 Texas Crim. Rep., 633; 95 S. W. Rep., 1069; Washington v. State, 51 Texas Crim. Rep., 542; 103 S. W. Rep., 879.

### 5.—Same—Jury and Jury Law—Special Venire—Practice.

Upon trial for murder, in the examination of the jurors on their voir dire, there was no error to refuse a request that each venire-man should be examined in the absence and without the presence of the remaining venire-men; this was a matter for the discretion of the trial court.

### 6.—Same—Charge of Court—Murder in Second Degree.

Where upon trial for murder, the evidence showed that the deceased was shot down by the defendant, while the former was sitting by his fireside unarmed, etc., there was no error in the court's failure to charge on murder in the second degree.

### 7.—Same—Sufficiency of Evidence—Death Penalty.

Where upon appeal from a conviction of murder in the first degree, assessing the death penalty, the record showed that every right of the appellant had been carefully guarded, the conviction will not be disturbed.

Appeal from the District Court of Polk. Tried below before the Hon. L. B. Hightower.

Appeal from a conviction of murder in the first degree; penalty, death.

The opinion states the case.

No brief on file for appellant.

*F. J. McCord,* Assistant Attorney-General, for the State.—On question of motion for change of venue: Cases cited in opinion. On question of race discrimination: Cases cited in opinion. On question of insanity: Hurt v. State, 40 Texas Crim. Rep., 378; 50 S. W. Rep., 719.

RAMSEY, JUDGE.—Appellant was indicted in the District Court of Polk County for the murder of one Jack Darden. He was tried and on December 10th last was found guilty of murder in the first degree, and his punishment assessed at death.

The facts show briefly that appellant had married a great niece of the deceased, Jack Darden. Jack Darden was a very old negro man, something like 80 or 85 years of age. He was killed about seven or eight o'clock on the evening of March 29, 1907. He was shot through an open window while sitting by his fireside in his cabin parching and eating peanuts, the whole load of shot entering his head behind his ear. Another negro, 'Press Scott, was in the room at the time, and immediately after the fatal shot was fired, appellant walked up to the window through which the deceased had been shot and looked in on the dead man through the window, holding his gun in his right hand. The evidence also develops the fact that on the same evening and within a very few minutes after Jack Darden was killed, that at another place a short distance away, Ann Darden was shot and killed, and that John Swearingen, and Georgia Rich, a negro woman, were shot by appellant.

The defense, substantially relied upon was the insanity of appellant. The court charged on murder in the first degree only, and submitted the issue of insanity. No complaint was made in the trial court in motion for a new trial or in assignments of error of the charge of the court, except the error alleged on the part of the court in not charging on murder in the second degree. The charge of the court was an admirable presentation of the law, and was neither criticised nor is it subject to criticism as to any matter contained in it. We do not believe the issue of murder in the second degree was raised by the evidence. Clearly it was a case of assassination deliberate and purposeful, or the appellant was entitled to go free on the ground of insanity. There were on the trial several questions raised, which we will discuss in their regular order.

The first bill of exceptions is to the action of the court in overruling the defendant's motion for a change of venue. This motion for a change of venue set up the fact at some length that there was so great a prejudice in Polk County among the inhabitants and qualified jurors thereof, that appellant could not obtain a fair and impartial trial. In his application it is stated that a few minutes or hours after the alleged crime of which he (appellant) is charged, a vast throng or mob of people, white and black, surrounded the home of appellant with the intention of mobbing him, and shot into his house and wounded him; and that after he had fled for his life, they burned his house and household goods, so great was their rage and desire for summary vengeance. That for a number of days appellant was hunted by the mob, and when finally arrested by the officers, a vast throng and mob gathered together and threatened to take the defendant from the officers and mob him, and would have done so if it had not been for the interference of the officers and a few other people to him unknown. He also avers in his motion that there exists in said county where he was to be tried a strong racial

prejudice against the negro race. That he is informed and believes that some of the people of Polk County had asserted that if he sought a continuance of his cause, and did not at once submit to a trial, that they would mob him, no matter what the grounds for his continuance might be. That the prejudice against him is so great that a jury selected to try him in Polk County would be afraid not to convict him, and be afraid to give him a fair and impartial trial for fear of criticism, and for fear that they might suffer personal injury. That there exists a dangerous combination against him in said county instigated by influential people, by reason of which he cannot expect a fair and impartial trial in said county. That among others one John H. Kirby, a large land owner in said county, had taken an active part in the case, and had offered a large reward for his arrest and conviction; that the persons claiming the reward for his conviction are actively at work and have been in the prosecution of this case, and will do all in their power to procure his conviction. That the same objections go to the following counties: Polk, Angelina, Trinity, Houston, Walker, San Jacinto, Montgomery, Liberty, Hardin, Tyler, Nacogdoches and Grimes, in all of which counties there exists a strong prejudice against the negro race, of which he is a member, and so strong that he cannot get a fair and impartial trial. It is also averred in this motion that after the alleged crime with which he is charged, that the Houston Post and Houston Chronicle, both influential daily papers, with a large circulation in Polk and other counties, published and circulated long inflammatory and misleading articles, which the people have read and have formed a deep seated prejudice against him and his case. It was further averred that the prejudice against him in Polk County was so great that it was impossible for him or his friends or his attorneys to obtain compurgators to support his affidavit and application for a change of venue. Article 615 of the Code of Criminal Procedure is, as follows: "A change of venue may be granted on the written application of the defendant, supported by his own affidavit and the affidavit of at least two credible persons, residents of the county where the prosecution is instituted, for either of the following causes, the truth and sufficiency of which the court shall determine: 1. That there exists in the county where the prosecution is commenced so great a prejudice against him that he cannot obtain a fair and impartial trial. 2. That there is a dangerous combination against him instigated by influential persons, by reason of which he cannot expect a fair trial." Article 613 of the Code of Criminal Procedure is, as follows: "Whenever in any case of felony the district judge presiding shall be satisfied that a trial alike fair and impartial to the accused and to the State cannot, from any cause, be had in the county in which the case is pending, he may upon his own motion order a change of venue to any county in his own or in an adjoining district, stating in his order the grounds for such change of venue." It has been held in this State that the provisions of the statute must be complied with to entitle a defendant to a change of venue; that the application must be supported by the affidavit of at least

two credible persons, residents of the county where the prosecution is instituted. This requirement is not complied with by the supporting affidavit of the defendant himself, and one other person. O'Neal v. State, 14 Texas Crim. App., 582. This court has gone further and held that, where there was filed an affidavit alleging the existence of so great a prejudice in the county against the defendant as to prevent a fair trial, but persons could not be induced to make affidavit of such prejudice, and he asked for process for certain persons residents of the county, whom he believed would testify to the existence of such prejudice, the application did not comply with the statute. See Mitchell v. State, 43 Texas 512. Clearly, the application for a change of venue did not comply with the provisions of the Code of Criminal Procedure, and in view of the action of the learned trial court in declining to grant a change of venue of his own motion, as he was authorized to do, we find no warrant for reversing his decision in respect to this matter.

Again, motion was made by appellant in the court below to quash the indictment because same was returned on a legal holiday. It is no longer an open question in this State that an indictment otherwise legally returned will not be set aside or quashed for the sole reason that same was returned on a legal holiday. Dunlap v. State, 9 Texas Crim. App., 179; Pender v. State, 12 Texas Crim. App., 496, and Webb v. State, 40 S. W. Rep., 989.

The next question raised is to the action of the court in overruling the motion made by appellant to quash the indictment and the special venire for the reason that in organizing and empaneling same, there was discrimination against the negro race; and because the jury commissioners in selecting the grand jury and in drawing the petit jury discriminated against the negro as a race, and that the organization of the jury and the action of the court in respect thereto was violative of the Constitution of the United States. It was shown on trial that the grand jury which indicted appellant consisted of eleven white men and one negro, and that one of the jurymen who sat in his case on the trial was a negro. Testimony was heard at some length on this question. The presiding judge testified that when he selected the jury commissioners who drew the panel for the term of court at which appellant was tried, he instructed them not to discriminate against the colored race, and stated that he had done so ever since the Seth Carter case was decided. To make the matter clear, we quote his testimony entire, as follows: "I state that the jury commissioners had been instructed by me since the decision of the Seth Carter case, about the time the district court ends, that the jury commissioners have been charged by me specially at the close of my instructions not to discriminate against the colored race on account of race, color or previous condition of servitude; but to take all of them that come up to the standard, and for them to get the tax rolls and wherever they come to a name that comes up to the standard, be it colored man or white man, it was their duty to take him. I referred them to the articles of the statutes that gives them the qualifications of

jurors, and told them to be governed by those articles. I gave each article specially and told them they could not discriminate, but wherever they found a man that came up to the standard as a juryman it was their duty to take him." The other testimony in the case does not disclose any discrimination, but on the contrary rebuts and disproves the charge of such discrimination. All the jury commissioners testified that they did not leave any person off the jury list because such persons were negroes. Under the facts of this case, as presented in this record, we think the court properly overruled the motion of quash the venire. See Thomas v. State, 49 Texas Crim. Rep., 633; 95 S. W. Rep., 1069, and Washington v. State, 51 Texas Crim. Rep., 542; 103 S. W. Rep., 79.

Another bill of exceptions found in the record complains of the action of the court in not enforcing the rule in the examination of the jurors on their voir dire. Application was made by appellant and the request insisted on that each venire-man should be examined in the absence and without the presence of the remaining venire-men. It is possible that in some cases there would seem to be some reason to grant such a request, but we think that it would rarely be necessary so to do. This is a matter of procedure so wholly subject to the discretion of the trial court that in the absence of any statute in terms giving this right, we do not feel that we should interfere. Certainly we would not be authorized so to do in the absence of any showing or pretense of showing that appellant had been injured by the denial of such claim.

Again, as indicated above, appellant complains of the action of the court in failing to charge on murder in the second degree. We are not unmindful of the intimation and suggestion so frequently made by this court of the necessity and requirement in most cases of murder that such charge should be given, but in the light of this record, and as applied to the facts of this case, it is illogical and inconceivable that the charge of murder in the second degree could arise. Numerous threats were shown by several witnesses having been made by appellant against the deceased. The deceased was a very old man, eighty or eighty-five years of age. In the evening, in his little humble cabin, he was sitting by his fireside unarmed, evidently expecting no harm, parching and eating peanuts. Without a moment's warning, while so engaged, through an open window, he was shot by an assassin to his death. At once, the appellant, armed with his gun, comes to the window through which the shot had been fired, and looks through it on the dead body of the deceased and walks away. To say in such a case that murder in the second degree arises on the facts thus proven, is, we think, not to be seriously considered. There was in the case, as we view it, a serious contention as to the insanity of the appellant. This was quite strongly presented by the testimony of several physicians, and the horror of the tragedy in view of the indiscriminate shooting of other persons by appellant about the same time with apparently little or no motive, but

the jury have found on a charge neither complained of nor subject to complaint against appellant on this issue.

We have, in view of the punishment assessed, gone carefully over the entire record. It is free from spot or blemish. Every right of the appellant seems to have been carefully guarded. No complaint is made at the admission of any improper testimony, or the rejection of any evidence which might in the slightest degree have tended to exculpate him. The charge of the court is unobjected to and unobjectionable, and the jury, with the matter so presented, have not only found appellant guilty, but have assessed against him the highest penalty known to the law. It would be mere weakness for us to interfere, and we can not do so.

The judgment of the court below is affirmed.

*Affirmed.*