OSCAR MCCARLEY V. STATE

No. 27,333. February 2, 1955
Rehearing Denied (Without Written Opinion) March 23, 1955

*Walter Conway, Peter S. Navarro, Jr.,* and *R. O. Kenley* (on appeal only), all of Houston, for appellant.

*Dan Walton,* District Attorney, *Eugene Brady,* Assistant District Attorney, Houston, and *Leon Douglas,* State's Attorney, Austin, for the state.

MORRISON, Presiding Judge.

The offense is murder; the punishment, 8 years.

The trial of this case was lengthy, and since there is no material conflict as to how the homicide occurred, the 400-page statement of facts will be summarized.

The appellant was the owner of eleven apartment houses in the city of Houston. He spent his time looking after his property and "for my sport and hobby" maintained a string of racing horses, in charge of a trainer. During the four years preceding the homicide, the city health officer and his subordinates had made repeated visits to the appellant's real estate holdings in an effort to get him to repair sewer lines that were leaking and make other renovations which they considered necessary to protect the health of appellant's tenants and those residing in the vicinity. It is apparent from the appellant's testimony that he considered the actions of the city employees as an attempt on their part to meddle in his business and to persecute him.

On March 18, 1954, the city health officer sent the appellant a letter concerning one of his apartment houses, from which we quote in part:

"This building is a two-story box type house 20' by 20', with the outside covered with imitation brick composition siding. The roof is covered with composition roll roofing. The second floor is served by an outside stairway. The building is designed for and actually used for the occupancy of more than one family which is connected to a sanitary sewer and does not have properly installed in said building at least one commode in good working order for each eight (8) persons thereof living in said building. The upstairs portion of the building has a closet bowl only, with no closet tank. The commode is flushed with a bucket of water, not having water piped to the closet tank. The waste sewer lines from the closet, tub and basin do not comply with the plumbing code of the City of Houston, and the sanitary condition is terrible. The building has become so deteriorated through natural causes and by damages through lack of maintenance, upkeep and painting and thereby through exposure to the elements, especially wind and rain, to the extent that the roof, windows and doors or portions of the building which ordinarily protect the occupants from the weather, will no longer so reasonably protect the same. The stairs leading to the apartment above have rotten stringers and the landing is rotten and unsafe. The rafter ends are rotten and the rotten decking has no support. The doors, windows or other outside openings of the building are not reasonably screened against flies and other insects by screening in ordinary state of repair sufficient to reasonably protect the occupants. There are no windows or doorframes on the second floor. The second floor bathroom is in a lean-to and has holes in the wall. The window screens are badly torn in this apartment and many window panes are broken out. * * * The building is maintained in a condition of filth and uncleanliness to such a degree and extent as to seriously hazard the health of persons living in such building. * * * The foregoing unsanitary, filthy and deteriorated condition of this building at 717 Tulane Street renders the occupancy of this building an extreme risk to public health and the continued existence of which filthy and unsanitary conditions will, under all probabilities, result in an injury to the health of the persons living in said building or to the public generally.

"I find that the only measure that would safely abolish this substandard building and health hazard located at 717 Tulane Street would be to install door and window-frames and properly screen same in the upstairs apartment; replace rotten rafters

in the roof; replace rotten stairs and stair supports; completely replace electrical wiring with new wiring by a licensed electrician; completely replace all plumbing installations and fixtures so as to comply with the plumbing code of the City of Houston, so as to have at least one commode in good working order for each eight (8) persons living in said building.

"I find the maximum amount of time to make the above corrections to the building * * * is forty-five (45) days from date of this notice.

"I further find that if you are not willing or able to accomplish the foregoing corrective measures within the said period of forty-five days, you must then abolish the sub-standard building and health hazard by causing this building to be vacated of all human occupancy and not used again for living quarters until the physical conditions are corrected. * * * *"

On the same day placards notifying the occupants that the building was a health hazard were posted in a number of appellant's houses. These placards were torn off some of the buildings, and on the day of the homicide deceased and two other city employees were engaged in tacking up new placards when the appellant fired three loads of buckshot at them from an upstairs window, killing the deceased and injuring the other two men.

Only two questions are properly presented for review.

Appellant filed a motion for change of venue. A hearing was had on said motion. Two housewives who knew the appellant, one of appellant's attorneys and a Mr. Renfrow testified that in their opinion appellant could not get a fair trial in Harris County because of the publicity which had been given the homicide. Three newspaper reporters who were called by appellant testified that in their travels they had encountered no prejudice against the appellant and expressed the opinion that he might secure a fair trial in Harris County.

There is a complete absence of any showing that any prejudice against the appellant found its way into the jury box at his trial. Irrespective of the amount of news coverage the crime may receive, unless such a showing is made, this court and the Supreme Court of the United States are reluctant to reverse a conviction upon a failure to change venue. See Jones v. State, 156 Cr. Rep. 248, 240 S.W. 2d 771; Jones v. State, 156 Texas

Cr. Rep. 475, 243 S.W. 2d 848; and Stroble v. California, 343 U.S. 181.

Appellant requested the following charge:

"If you find from the evidence that the defendant, Oscar W. McCarley, reasonably believed that his habitat was being unlawfully violated, or if you have a reasonable doubt thereof, and if you further find from the evidence that the defendant, Oscar W. McCarley reasonably believed that the force used by him was necessary to repel such unlawful violation of the said McCarley's habitat at the time and under the circumstances that such force was used, or if you have a reasonable doubt thereof, then you will find the defendant 'not guilty.'

"A 'habitat' is defined as one's dwelling place or place of residence."

If we conceded that the deceased and his companions were trespassers at the time they were shot, which we do not, let us see what acts they were engaged in performing on the appellant's property. The only damage to appellant's property which could have resulted from their conduct would be the tack holes made in the outside walls, and the appellant knew that is all they intended to do. We do not think this is such an unlawful and violent attack as set forth in Article 1224, V.A.P.C., and clearly the appellant who shot them from ambush and without warning could not avail himself of the defense provided by such article. In Hatfield v. State, 156 Texas Cr. Rep. 425, 243 S.W. 2d 34, under a comparable situation, we held the refusal to give such a charge not error.

The trial judge is to be commended for the patience which he demonstrated during the course of this trial.

The judgment is affirmed.