## WILLIE EDWARD PHILPOT v. STATE

No. 31,025. January 6, 1960
Motion for Rehearing Overruled February 24, 1960

*R. L. Whitehead,* Longview (court-appointed) for the appellant.

*Ralph Prince,* District Attorney, Longview, *Charles C. Castles,* Assistant District Attorney, Houston, and *Leon Douglas,* State's Attorney, Austin, for the state.

DICE, Judge.

The conviction is for murder; the punishment, death.

92

The indictment was returned by the grand jury on March 2, 1959, and charged that on or about the 30th day of January, 1959, the appellant did unlawfully, voluntarily and with malice aforethought kill Joyce Goff "by choking and strangling her with a piece of wire and by choking and strangling her with his hands."

Appellant filed a motion to quash the indictment on the ground that it was returned on a legal holiday, was multifarious, and failed to allege the instrumentality which caused the death of the deceased. In overruling the motion the court did not err. In Macklin v. State, 53 Tex. Cr. R. 197, 109 S. W. 145, it was held that an indictment otherwise legally returned will not be quashed because it was returned on a legal holiday. An indictment may allege the several ways and means by which the proof suggests a homicide was committed. 22 Tex. Jur. par. 123, pages 622-625. Pruitt v. State, 132 Tex. Cr. R. 113, 102 S. W. 2d 417 and Wall v. State, 156 Tex. Cr. R. 239, 240 S. W. 2d 763. The allegation that the killing was by choking and strangling the deceased with a piece of wire and with appellant's hands was a sufficient description of the instrumentality alleged to have been used in the killing. Kuykendall v. State, 154 Tex. Cr. R. 384, 227 S. W. 2d 825 and Wall v. State, supra.

Appellant also filed a motion for change of venue in which he alleged the existence of so great a prejudice against him in Gregg County that he could not obtain a fair and impartial trial. The motion was signed and sworn to by the appellant but was not supported by the affidavits of two credible persons as required by Art. 562, V.A.C.C.P. Such motion was insuficient under the provisions of the statute. Windham v. State, 162 Tex. Cr R 620, 288 S W. 2d 90 and McGowen v. State, 163 Tex. Cr. R. 587, 290 S. W. 2d 521. We cannot accept the statement of appellant's counsel that because of high feeling against the appellant he was unable to secure the signature of two compurgators as a substitute for the requirements set forth in the statute.

It appears from the record that before overruling the motion, the court did hear evidence thereon, but a transcript of the evidence adduced upon the hearing is not before us. The record does however contain a transcript of the voir dire examination of the prospective jurors during the selection of the jury and of the evidence adduced upon the hearing of appellant's motion for new trial.

While the record reflects that appellant's case had received both newspaper and radio publicity in Gregg County which had been read and heard by some of the prospective jurors, the record does not reflect that any juror served in the case who stated that he could not set aside any opinion which he may have formed and try the case solely upon the evidence admitted at the trial. There is an entire absence in the record of proof that any prejudice against the appellant found its way into the jury box. It has been held that newspaper publicity alone does not establish prejudice or require a change of venue. Jones v. State, 156 Tex. Cr. R. 248, 240 S. W. 2d 771. It is also the rule that irrespective of the amount of news coverage a crime may receive, in the absence of a showing that any prejudice against the accused found its way into the jury box, this court is reluctant to reverse a conviction upon the failure to change venue. Jones v. State, supra and McCarley v. State, 161 Tex. Cr. R. 263, 276 S. W. 2d 300. Under the record here presented we perceive no error in the court's refusal to grant appellant's motion for a change of venue.

The state's evidence shows that the deceased, Joyce Goff, was a young girl, 10 years of age who lived with her foster mother, Minnie Goff, in the city of Longview. The mother worked at a motel between the hours of 3 and 10 P.M. during which time Joyce was cared for by her aunt who lived in the third house down the street from Joyce's home where she operated a cafe next door. On the afternoon of January 30, 1959, Joyce came to her aunt's home from school and stayed until she left the house alone between 8 and 8:20 o'clock P.M. Around 8:45 P.M. Aubrey Crayton came to the home of the deceased where he also lived and found the lights and television set on and the back door open. He also noticed a spot of blood and some dirt and leaves on a bed. Crayton then went to the motel and picked up the deceased's mother and thereafter it was discovered that the deceased was missing. A search for the deceased immediately ensued which culminated in finding the deceased's body the next morning in a plum thicket approximately 150 yards from the Goff residence. At the time the body was found a wire clothes hanger was drawn tightly around the neck with one end caught on a bush and the body partially suspended in the air.

Dr. Gwyn Harwell, a pathologist, testified that she examined the body and found that the eyes were swollen, the tongue was protruding from the mouth, that there were linear marks on both sides of the neck, that the vagina was torn and bloody

and male sperm was present therein. Dr. Harwell stated that from her examination it was her opinion that the cause of death of the deceased was due to strangulation which could have been caused by either a wire or the hands of a grown man.

It was shown that two of the deceased's belts which had been broken were found in her home, one lying on the bed near the blood spot and the other near the back door; that the curtains in one of the bed rooms had been pulled together and were held by a chair and that a wire coat hanger which was kept in the kitchen was missing.

The testimony further shows that the appellant had lived in the neighborhood for about three weeks; that on the night in question he was in the cafe operated by the deceased's aunt and that he left about dark and was back in the cafe around 9 P.M. It was also shown that appellant had only two shirts; that on the night of the homicide he changed shirts and after his arrest one of the shirts which he had worn was found in the loft of the house where he was living. Both of the shirts worn by appellant contained blood spots and a test of the blood on one of the shirts showed that it was human blood of the same type as the blood from the vagina of the deceased and the blood which was found on the bedspread.

Appellant's written confession was introduced in evidence by the state in which he admitted criminally assaulting the deceased in her home on the night in question and taking her body to the thicket nearby. Appellant stated in his confession that he first grabbed the deceased around her throat as she entered the front door; that he then threw her on the bed and with both hands put all his weight on her neck until she was limp; that he then carried her into the kitchen, put her on the floor, and that he then went to the bed room next to the kitchen where he pulled the curtains on the windows and put a chair against them; that he then went back to the kitchen where he noticed a coat hanger on the wall which he took and tied around the deceased's neck; that he then had intercourse with the deceased after which he carried her body in his arms to the thicket. In his confession appellant identified the coat hanger that was tied around the deceased's neck as the one which he had taken from the kitchen wall and placed around her neck and also identified the pieces of the two broken belts found in the deceased's home as parts of the belts which he stated that he intended to tie around her neck but which he broke when pulling on them to test their strength.

Appellant did not testify but called as a witness Dr. W. B. Langston, a neuro-psychiatrist, who testified that he had examined the appellant and that in his opinion it was possible that appellant had a mental illness, and that it was also possible that appellant might commit an assault through circumstances beyond his control, but that in his opinion appellant was aware of what he was doing and knew the difference between right and wrong.

The evidence is amply sufficient to support the jury's verdict and no reversible error is shown.

The judgment is affirmed.

Opinion Approved by the Court.

### ON APPELLANT'S MOTION FOR REHEARING

WOODLEY, Judge.

Appellant's able and conscientious counsel was appointed by the court to defend him. He testified at the hearing on the motion for new trial that in filing his motion for change of venue he realized it was necessary to secure the signature of two individuals that appellant could not receive a fair trial in Gregg County, and was unable to find anyone who was willing to sign and swear to this statement.

It was this testimony which the original opinion refers to as the "statement of appellant's counsel."

Our holding was and is that in the absence of a motion supported by affidavits of two compurgators, as required by the statute, and of evidence in support thereof, the trial court did not err in overruling the motion for change of venue; and that the evidence produced at the hearing of appellant's motion for new trial, including the testimony of appellant's counsel, does not show that the trial judge abused his discretion in overruling said motion.

The instant facts are deemed insufficient to show a denial of due process in failing to change venue, within the view of certain members of the Supreme Court of the United States: Shepherd v. Florida, 341 U.S. 50-55, 95 L.Ed. 740.

Appellant's motion for rehearing is overruled.