**William Bond CLIFFORD, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 40887.**

Court of Criminal Appeals of Texas.

Jan. 10, 1968.

Rehearing Denied March 6, 1968.

Warren Burnett, Odessa (on appeal), for appellant.

William Hunter, Dalhart, and Leon B. Douglas, State's Atty., Austin, for the State.

## OPINION

WOODLEY, Presiding Judge.

The offense is assault with intent to murder with malice; the punishment, 12 years.

The indictment alleged that appellant committed the assault in Deaf Smith County on or about April 8, 1966, by shooting Billy Joe Stevens with a gun.

The record shows without dispute that after shooting and killing his wife, at Canyon in Randall County, appellant drove to Hereford, in Deaf Smith County, and to Hereford Feed Mill where Billy Joe Stevens was employed and shot him at close range with a .22 caliber pistol loaded with hollow point bullets. Five shots struck Stevens in the head, one of which caused the loss of an eye. A sixth shot struck Stevens above the heart.

The evidence further reflects that appellant's wife had left him and had sued for divorce and he was under a restraining order "to leave her alone and not to hurt her in any way." Appellant testified that he had known since December 20, 1965, about Billy Joe Stevens having an affair with his wife. (The shooting occurred on April 8, 1966.)

The record further reflects that appellant had been indicted in Randall County for the murder of his wife; that the venue was changed to Denton County and that he had been tried and convicted. In the absence of the jury it was shown that a Denton County Jury had assessed his punishment at 2 years. (The sentence from which this appeal is prosecuted was cumulated with said 2 year sentence.)

Appellant testified to the effect that he did not remember anything that transpired concerning the shooting of his wife but realized that he had done something to hurt her, and testified:

"Q. What, if anything, did you do next?

"A. Well, I got in my car and I knew— I had that gun in my hand and I knew

here was this guy chasing me and I knew very well I had done something to my wife and all I could think about was getting this man that had broken up my home, ruined my life, my children's lives and all this—and I went to Hereford.

\* \* \* \* \* \*

"Q. Did you see Billy Joe Stevens at the Hereford Feed Yard?

"A. Yes, I did.

"Q. Did you say anything to him?

"A. I don't remember saying a word to Billy Joe Stevens.

"Q. All right. What, if anything, happened next?

"A. Well, I guess I shot him out there at the Feed Yards and then I went and I give this pistol to this girl in this front office and asked her to call the sheriff.

"Q. All right. Did you have any conversation there with her?

"A. Yes, I had a conversation with this young lady.

"Q. What, if anything, was said?

"A. Oh, she said—asked me if I was kidding, I said, 'No,' that I was serious and she asked me why I would kill Bill Stevens and I said the man had torn up my home, ruined my life, my kids' life, I even went on to tell her that if she was married that she didn't have any idea what she could get into by running around with other men."

■ We find no merit in appellant's ground of error No. 2 which complains of the refusal of his requested charge on aggravated assault.

■ Appellant's first and principal ground of error is: "The trial court reversibly erred when it failed to sustain appellant's motion to change venue."

Appellant's brief points out that the trial which gave rise to this appeal began on February 6, 1967, in Deaf Smith County where the offense was alleged to have occurred on April 8, 1966, and evidence was taken relevant to his motion to change venue on October 1, 1966.

Numerous news articles were introduced, the first of which described appellant as "the son of a prominent Amarillo real estate agent," and another referred to Billy Joe Stevens as "the nephew of a former Randall County Judge."

The newspaper, television and radio coverage included stories of the murder in Randall County and the shooting in Deaf Smith County on April 8, 1966; the denial of bail and the change of venue and the trial and result of the trial in Denton County.

The motion for change of venue was not finally overruled until some 4 months after the hearing of evidence when the voir dire examination of the jury panel was complete and a list of 36 jurors had been furnished for the exercise of peremptory challenges.

None of the jurors whose names appeared on such list had an opinion as to the guilt or innocence of appellant, and *none had been challenged for cause or objected to by the defense.*

The record does not reflect that either the state or the defense exhausted their peremptory challenges or that appellant was required to accept any juror that was objectionable to him.

Under the test applied by this court in the recent cases of Cotten v. State, Tex. Cr.App., 406 S.W.2d 452, and Taylor v. State, Tex.Cr.App., 420 S.W.2d 601, the ground of error is without merit. See also Jones v. State, 156 Tex.Cr.R. 248, 240 S.W. 2d 771; McCarley v. State, 161 Tex.Cr.R. 263, 276 S.W.2d 300; Philpot v. State, 169 Tex.Cr.R. 91, 332 S.W.2d 323; Moon v. State, 169 Tex.Cr.R. 14, 331 S.W.2d 312.

Appellant cites and relies upon Pamplin v. Mason, 364 F.2d 1, wherein the 5th Circuit Court of Appeals said:

"In this case, therefore, we apply the Irvin holding with the gloss of Rideau, Estes, and Sheppard. The test is no longer whether prejudice found its way into the jury box at the trial, as the Texas court stated in the petitioner's appeal. Mason v. State, Tex.Crim.App.1964, 375 S.W.2d 916. As we read the Supreme Court cases, the test is: Where outside influences affecting the community's climate of opinion as to a defendant are inherently suspect, the resulting probability of unfairness requires suitable procedural safeguards, such as a change of venue, to assure a fair and impartial trial. As the Supreme Court stated in Sheppard v. Maxwell [384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600]:

" 'Due process requires that the accused receive a trial by an impartial jury free from outside influences. Given the pervasiveness of modern communications and the difficulty of effacing prejudicial publicity from the minds of the jurors, the trial courts must take strong measures to ensure that the balance is never weighed against the accused.

* * * [W]here there is a reasonable likelihood that prejudicial news prior to trial will prevent a fair trial, the judge should continue the case until the threat abates, or transfer it to another county not so permeated with publicity. * * * If publicity during the proceeding threatens the fairness of the trial, a new trial should be ordered.'

"384 U.S. at 362, 86 S.Ct. at 1522, 16 L. Ed.2d at 620."

The argument advanced is that significant advantage fell to the prosecution when it was permitted to try appellant in a county where "curiosity" about the light sentence in Denton County was widespread.

We note, in this connection, that upon return of the finding of guilty appellant elected to have the same jury fix the punishment. (Art. 37.07, 2b, Vernon's Ann. C.C.P.1965).

We also note that the jury was not selected until some 4 months after the hearing on the motion for change of venue, 5 months after the trial in Denton County, and some 10 months after the killing and assault.

■ In Irvin v. Dowd, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751, cited by appellant, Justice Clark delivering the opinion of the court setting out guidelines to be used in determining whether a change of venue should be granted stated:

"It is not required, however, that the jurors be totally ignorant of the facts and issues involved. In these days of swift, widespread and diverse methods of communication, an important case can be expected to arouse the interest of the public in the vicinity, and scarcely any of those best qualified to serve as jurors will not have formed some impression or opinion as to the merits of the case. This is particularly true in criminal cases. To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court. (Cases cited.)"

In Beck v. Washington, 369 U.S. 541, 82 S.Ct. 955, 8 L.Ed.2d 98, the court said:

"The fact that petitioner did not challenge for cause any of the jurors so selected is strong evidence that he was convinced the jurors were not biased and had not formed any opinions as to his guilt. * * *

"While this Court stands ready to correct violations of constitutional rights, it also holds that 'it is not asking too much

that the burden of showing essential unfairness be sustained by him who claims such injustice and seeks to have the result set aside, and that it be sustained not as a matter of speculation but as a demonstrable reality.' U. S. ex rel. Darcy v. Handy, 351 U.S. 454, 462, 76 S.Ct. 965, 970, 100 L.Ed. 1331, 1338 (1956)."

" * * * Of course there could be no constitutional infirmity in these rulings if petitioner actually received a trial by an impartial jury."

Under the record we are unable to agree with appellant's contention that he did not receive a trial by an impartial jury free from outside influences or that the holding of the 5th Circuit Court of Appeals in Pamplin v. Mason, supra, requires that the conviction be reversed.

The judgment is affirmed.