Joseph Stanley FAULDER, Appellant,

v.

The STATE of Texas, Appellee.

No. 69077.

Court of Criminal Appeals of Texas,
En Banc.

Sept. 30, 1987.

Vernard G. Solomon, Marshall, for appellant.

Carter Beckworth, Dist. Atty., Odis R. Hill, Sp. Prosecutor, Longview, Phil Burleson, Sp. Prosecutor, Dallas, Robert Huttash, State's Atty., Austin, for State.

## OPINION

TEAGUE, Judge.

Joseph Stanley Faulder, appellant, was convicted by a jury of committing the murder of Inez Phillips while in the course of committing or attempting to commit the felony offense of aggravated robbery. After the jury answered the special issues submitted to it by the trial judge in the affirmative, see the provisions of Art. 37.-071, V.A.C.C.P., the trial judge assessed appellant's punishment at death.

To better understand appellant's first ground of error, that "The Trial Court erred by denying the Appellant's Special Plea in Bar and Former Jeopardy," we find it necessary to give a brief history of appellant's case.

In *Faulder v. State*, 611 S.W.2d 630 (Tex.Cr.App.1980), a majority of this Court reversed appellant's conviction and sentence of death after it found that appellant's extrajudicial confession, which was admitted into evidence at his trial over objection, was obtained in violation of his federal Fifth Amendment constitutional rights. Thereafter, the State, through its local district attorney, filed a motion to stay this Court's mandate of reversal in order that it might petition the United States Supreme Court for writ of certiorari. Appellant then filed an application for writ of prohibition to prevent the State from seeking such review. A majority of this

Court held in *Faulder v. Hill*, 612 S.W.2d 512 (Tex.Cr.App.1981), that "Art. 5, Sec. 26, of the Texas Constitution does not prohibit [the State] from seeking review of our decision in this case by application for writ of certiorari in the Supreme Court of the United States," (515), and denied appellant's application for writ of prohibition. While that cause was pending on rehearing before this Court, the State's petition for writ of certiorari was denied by the Supreme Court. See *Texas v. Faulder*, 449 U.S. 874, 101 S.Ct. 215, 66 L.Ed.2d 95 (1980). Thereafter, a majority of this Court overruled appellant's motion for rehearing, with four judges voting to deny the application for prohibition on the ground of mootness.

The State then sought to retry appellant in Gregg County, the county where the offense occurred. However, the trial court judge granted appellant's motion for change of venue and transferred the cause to Angelina County where it was again retried and appellant was again convicted and assessed the death sentence. He now appeals that conviction and sentence to this Court.

This time we will affirm appellant's conviction and sentence of death.

Appellant does not challenge in this appeal the sufficiency of the evidence either as to his guilt or to the punishment that was assessed.[1] It is therefore unnecessary for us to detail the facts of the case, either on guilt or punishment. Nevertheless, we will set out the following brief summary of the facts of the case that were presented as to appellant's guilt and punishment of death.

The evidence presented at trial either reflects or indicates that James Moulton, who had previously done work at the residence of Inez Phillips, the deceased, who was then an elderly widow who lived in Gladewater, Doyle Hughes, Linda "Stormy" Mc Cann, and appellant initially entered into an apparent conspiracy to gain entry into Phillips' residence with the intent to break into a floor safe that Moulton believed that Phillips kept inside of her residence. Based upon his prior employ-

ment, Moulton had concluded that there was money in the safe and convinced his cohorts of this. The parties, however, although they went and "checked" out the residence, did not at that time attempt to burglarize Phillips' residence. Later, however, appellant and Mc Cann entered into a new conspiracy to commit criminal wrongs and thereafter returned to Phillips' residence and gained entry, but soon discovered that there was no money in the safe. Appellant then proceeded to steal anything in the house that might have value, including Phillips' wedding ring. After appellant tied up, beat, and stabbed Phillips, he and Mc Cann then left the residence. The next morning, Phillips' maid, when she went to awaken Phillips, found Phillips' body bound and gagged with tape, with a large butcher knife protruding from her upper chest. The police were notified. The knife wound was shown to have extended nearly to the backbone of Phillips' body. The back of Phillips' skull was shown to have been crushed by a blunt instrument, probably a blackjack. Either injury was shown to have been sufficient to have caused Phillips' death. Appellant's connection to Phillips' death was shown primarily through the testimony of Moulton, Hughes, and Mc Cann. Mc Cann, who was present when appellant beat and stabbed Phillips to death, was, of course, the State's "star" witness.

Appellant presented no witnesses or evidence at either stage of the trial. At the punishment stage of the trial, the State presented evidence from two psychiatrists who testified that appellant was an extreme danger to society, with no regard for human life, and would very likely kill again if given that opportunity.

Appellant, through counsel, presents twenty-six grounds of error in a brief that was filed on February 1, 1984, which has not been amended or supplemented since that date. Appellant asserts that he is entitled to a new trial because (1) his special plea in bar, on the ground that the Double Jeopardy Clauses prohibited the

1. Nor did he in his former appeal.

State from retrying him for capital murder, should have been sustained by the trial judge; (2) the trial judge reversibly erred in unnecessarily limiting his voir dire examination; (3) the trial judge reversibly erred in not granting his motion for change of venue from Angelina County; and (4) in twelve grounds of error appellant claims that the trial judge reversibly erred in either not sustaining his challenges for cause as to certain named prospective jurors or in sustaining the State's challenge for cause as to one prospective juror.

Finding that none of appellant's grounds of error rise to the level of reversible error, each is expressly overruled.

■ Appellant asserts in his first ground of error that "The Trial Court erred by denying his Special Plea in Bar and Former Jeopardy." Appellant argues under his ground of error that the evidence that was adduced at his former trial, see supra, was insufficient to establish his guilt. As previously pointed out, in appellant's former appeal, see supra, he did not challenge the sufficiency of the evidence as to his guilt. Thus, he now makes a collateral attack on the sufficiency of the evidence that was adduced at his former trial. However, this is permissible under this Court's decisions. See *Ex parte Rathmell*, 717 S.W.2d 33, 34 (Tex.Cr.App.1986); *Ex parte Robinson*, 641 S.W.2d 552 (Tex.Cr.App.1982). Also see *Abney v. United States*, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977).

Appellant's sole argument under this ground of error is that if this Court excludes his erroneously admitted confession from the facts that were presented at his former trial then the evidence presented at his former trial should be held to be insufficient.

This Court has long adhered to the rule that in judging a challenge to the sufficiency of the evidence *all* of the evidence, which includes both the admissible and inadmissible evidence, will be considered. See *Dunn v. State*, 721 S.W.2d 325 (Tex.Cr.App.1986), and the cases cited on page 327, where this Court stated: "We pause to point out that in deciding the sufficiency of the evidence, *all* the evidence, both *proper*

and *improper*, must be considered in deciding that issue." Also see *Lucas v. State*, 721 S.W.2d 315 (Tex.Cr.App.1986), and the discussion found on page 318 thereof; *Gregg v. State*, 667 S.W.2d 125 (Tex.Cr.App.1984); *Schmidt v. State*, 659 S.W.2d 420 (Tex.Cr.App.1983); *Collins v. State*, 602 S.W.2d 537 (Tex.Cr.App.1980). The error that occurred at appellant's former trial was "trial error", and not "insufficiency of the evidence error", in that the trial judge erred, for reasons stated in our prior opinion, see supra, by admitting into evidence over objection appellant's extrajudicial confession. In *United States v. Scott*, 437 U.S. 82, 90–91, 98 S.Ct. 2187, 2193–2194, 57 L.Ed.2d 65 (1978), the Supreme Court of the United States held that "[t]he successful appeal of a judgment of conviction, on any ground other than the insufficiency of the evidence to support the verdict [citing *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978)], poses no bar to further prosecution on the same charge." Appellant does not maintain in his ground of error in this cause that *all* the evidence that was presented at his first trial, both proper and improper, was insufficient to support his conviction. Therefore, his first ground of error is overruled.

■ Appellant asserts in his second ground of error that "The Trial Court erred in unnecessarily limiting [his] Voir Dire examination, thereby denying [him] effective assistance of counsel." We disagree.

As previously pointed out, after this Court reversed appellant's former conviction, the cause was remanded to the trial court for a new trial. Thereafter, pursuant to appellant's motion for change of venue from Gregg County, the cause was transferred to Angelina County. On June 15, 1981, jury selection began for the second trial. On the previous day, June 14, 1981, a Sunday, which was "Flag Day" in this country for that year, the local newspaper, *The Lufkin News*, published an article about the upcoming trial and placed said article next to a picture of what appears to be a partial flag of the United States with the words "FLAG DAY JUNE 14" stated thereon. We attach the article to this opin-

ion as "Appendix A". Approximately 75% of the summoned venirepersons had read all or part of this article. Contrary to the State's contention, the record makes it obviously clear to us that this article greatly concerned appellant's trial attorney as to what effect it might have on his client receiving a fair and impartial trial in Angelina County.

On June 30th, appellant's counsel filed a motion for change of venue, to transfer the cause from Angelina County. This motion was filed after the 99th prospective juror had been examined by the parties. The record reflects that appellant's counsel either fully explored or was given the opportunity to fully explore with the previous 98 venirepersons their knowledge of the article and what effect, if any, it might have on them in the event they were chosen as jurors in this cause. The motion was heard and overruled on July 2nd by the trial judge. Appellant's evidence at the motion hearing consisted only of newspaper articles and a transcription of a radio broadcast. We have yet to find in the record where it was ever demonstrated that any prospective juror testified that he or she heard the broadcast.

The record reflects that after the voir dire examination of the forty-third prospective juror, Sue Kendrick, the trial court instructed appellant's counsel as follows: "All right, let the record reflect I do instruct counsel, Mr. Solomon [counsel] for the Defendant, that he is not allowed to refresh jurors' memory by telling them what is in the Article. He may ask them about what they remember, he may ask them if they formed opinion, and so forth, just like always, ok?" Given the state of this record, we find that this instruction did not restrict appellant's counsel from inquiring of any venireperson whether he or she had read the newspaper article and, if so, what effect, if any, it had on him or her, but simply restricted counsel from asking the venireperson, who stated that he had read the article, but did not recall any of the details of the article, whether statements contained within the article, which counsel wanted to make the venireperson aware of, refreshed the venireperson's

memory of the details of the article. However, as we shall demonstrate, this was not an iron clad rule that the trial judge imposed. We do not find that the instruction unnecessarily precluded or prohibited appellant's counsel from ascertaining whether the newspaper article might have affected any prospective juror's views on the guilt or innocence of appellant, should that person be selected on the jury.

Based upon what appellant's counsel argues under his second ground of error, and what he stated in oral argument before this Court, we find that counsel is not complaining that he was prevented from asking any prospective juror whether he had read the newspaper article, see "Appendix A", or asking the juror whether the article might have caused him to form some sort of opinion as to the guilt of appellant, but, instead, is arguing that if a prospective venireperson stated that although he had read the article and could not remember any details of the article, the trial court's instruction prevented him from referring to statements from the article in an attempt to "jog" or refresh the venireperson's memory.

The instruction by the trial judge occurred after the voir dire examination of prospective juror Sue Kendrick. Kendrick, who testified that she preferred to be called Sue, which request we will honor, was prospective juror number 43. After one of the prosecuting attorneys asked Sue if she had heard of appellant, she responded: "No, not other than the newspaper account [see 'Appendix A']." Sue testified that her reading of the newspaper article did not cause her to form an opinion as to appellant's guilt or innocence. Counsel for appellant also questioned Sue about her having read the newspaper article. When asked what she remembered about the article, Sue told counsel that it was "rather garbled ... The facts I do not remember. The names, only one or two." Sue testified, however, that she remembered the article stating that the cause had been transferred from Gregg County to Angelina County; that the article referred to the year 1975; that it referred to Judge Jus-

tice; and that someone was paying to have appellant prosecuted. Sue further testified that she had not formed "any factual impressions ... about the facts of the case" as a result of her having read the article. After questioning Sue for some time, appellant's counsel returned to the newspaper article in his questioning. Sue again told him that she did "not remember any of the particulars [of the article]." Sue testified that she did not remember "the newspaper article stating that the defendant had been convicted of capital murder for this offense and had been given the death penalty". When asked whether "the story stated that the case was reversed because the defendant had allegedly given a confession to the offense", Sue responded: "Now that you mentioned it, yes, sir."

Appellant's counsel thereafter questioned Sue about her knowledge of a confession by a defendant, but in questioning Sue on this subject counsel did not refer to appellant having previously given a confession, and she responded in a general way on the subject of an accused person giving a confession. Counsel thereafter asked Sue, again referring to the newspaper article: "[D]id you form any type of immediate response ... or immediate reaction to that information whenever you got up there [presumably in the witness chair] and realized that was the case you were talking about reading about? A: Yes. Q: Did it at that point in time cause you in any way or form or fashion to consider that the person charged with that crime was guilty of that crime?" At this time, one of the prosecutors objected and his objection was sustained. Thereafter, appellant's counsel questioned Sue for purposes of his informal bill of exception. Sue testified at that time that her reading of the article did not cause her to form any conclusion or any opinion "in any way that would influence [her] verdict in this case [if she was selected as a juror in this cause]." Sue testified that even if appellant's confession was not admitted into evidence, it would "enter into [her decision] somewhat." Although Sue testified that it would be hard to set aside the information about the confession, when asked whether she could "honestly" set it

aside, she stated: "I don't know. I hate to be—" At this time, after Sue had given her incomplete answer, and without further questioning her, appellant's counsel stated that he had completed his bill and challenged Sue for cause. The trial judge overruled his challenge. Thereafter, the prosecuting attorney further questioned Sue. Sue eventually testified that she did not know of any reason why she could not be a fair and impartial juror to both sides if she was selected as a juror. The State accepted Sue. Appellant's counsel then used a peremptory strike on Sue.

We find that a total reading of Sue's voir dire examination makes it clear, or should make it clear to anyone, that if she had been selected as a juror in this cause she would have rendered a fair and impartial verdict on appellant's guilt, based upon the evidence adduced and not on the newspaper article that she had read. Sue was not expressly asked by counsel whether, from reading the newspaper article, she had formed a conclusion as to appellant's guilt or innocence and, if so, whether, in her opinion, the conclusion would influence her verdict. See Article 35.16(a)(10), V.A.C. C.P., which provides in part that if a venireperson states that he has formed a conclusion as to the guilt or innocence of the defendant as would influence him in his action in finding a verdict, he shall be discharged without further interrogation by either party or the court. Furthermore, appellant's counsel does not complain on appeal about the trial judge's refusal to grant his challenge for cause of Sue. Given the fact that the trial court's complained of instruction did not exist until after the voir dire examination of Sue had been completed, the complaint or objection now urged on appeal does not comport with his objection at trial. See the cases compiled in Presiding Judge Onion's concurring and dissenting opinion that was filed in *Tallant v. State*, 742 S.W.2d 292 (Tex.Cr.App.1987); also see the cases compiled in Judge Mc Cormick's dissenting opinion that was filed in the same case.

Although it was only after Sue had testified that the trial judge gave the chal-

lenged instruction, and thus she is not implicated in his complaint about the trial judge's restrictive instruction, nor does appellant complain about the trial judge's refusal to sustain his challenge for cause as to Sue, we have nevertheless gone into great detail regarding Sue's testimony because we find that it is representative of what appellant's counsel is arguing under his second ground of error, i.e., either implicitly or expressly, that but for the above instruction the trial judge gave, he would have questioned prospective jurors James A. Banks, Joy F. Arnold, Alvin Powers, James Bates, Louise Falt, Emmit Jordan, Maudie Sallas, Joyce M. Collins, Lillian Mc Quilkin, and Fred Laake in detail and in similar fashion to the way he conducted his voir dire examination of Sue and what he questioned Sue about on his informal bill of exceptions about her recollection of the contents of the newspaper article, see "Appendix A", in order to refresh their memories as to what they actually recalled reading.

The record reflects that the trial judge in this cause stated into the record that if a prospective juror stated that he or she had read a newspaper article about the case and also stated that he or she could not recall any of the details of the article, then that prospective juror had stated enough and appellant's counsel would not be permitted to attempt to refresh the juror's memory by calling the juror's attention to certain specific details that were contained in the article. This statement did not become an iron clad rule, however.

We cannot agree with the trial judge that this is a correct statement of the law because the unknown still surrounds what might cause memory recall, memory refreshment, and memory itself. "Memory is selective, imperfect, and capable of subtly blocking out or filling in fabricated recall (called confabulation when done under hypnosis)". Goodenough, "Hypnosis in a Trance", Vol. 30, No. 12, *Federal Bar News and Journal.* However, in disagreeing with the trial judge, we certainly do not hold that when a prospective juror states that he or she has read a newspaper article or heard a radio or television broadcast

about the defendant's case, that the voir dire examination on the subject must never end, and that counsel should be permitted to twist the wash rag to the point that he shreds it in his attempt to refresh the venireperson's memory. Nevertheless, to subscribe to what the trial judge suggests, or advocates, is the law, we believe would always amount to an abuse of discretion by overly restricting the voir dire examination. Just how much probing of the venireperson's mind, in an attempt to refresh his memory, should be permitted must first be decided by the trial judge, whose decision is subject to review by the appellate court under the abuse of discretion standard. In this instance, given the record of this cause, we find that the trial judge did not unnecessarily restrict appellant's counsel's voir dire examination on the subject of the newspaper article.

We emphasize that appellant does not assert on appeal that the trial judge erred by overruling his challenge for cause of Sue, nor does he claim that the trial judge erred by restricting his voir dire examination of Sue. This is understandable because the record reflects that the above instruction did not come into existence until after Sue had testified. Thus, Sue is not truly implicated in appellant's complaint as set out in his second ground of error.

Appellant, however, argues that he "was forced to strike all venirepersons that admitted reading the newspaper story." The record, however, does not support appellant's statement. In support of his argument, appellant refers us to the voir dire examination of prospective juror Emmitt Jordan, which we have carefully examined.

The record reflects that Jordan initially told one of the prosecuting attorneys that he had read the newspaper article, see "Appendix A", but also stated that he did not form any opinion as to appellant's guilt or innocence as a result of reading the article; that he could set aside whatever he had read and "try this case strictly upon what he heard in this courtroom"; and that he understood that "it would be improper for anyone to be convicted upon what someone might read in a newspaper."

When questioned by appellant's counsel, Jordan, who was "a little bit hard of hearing", and stated that he had not read all of the article, replied: "All that I can remember it said that he—I can't even remember the man's name. Only thing I remember about it was a Mrs. Phillips and I didn't give it any thought." After counsel told Jordan that "I think the newspaper had to do with the case being moved. Do you remember anything about where it was coming from, why it's here in Lufkin, what has happened between Longview and Lufkin with the case? Do you remember anything along that line?", Jordan told counsel: "No, only thing I remember about it I know the case was coming from Longview or somewhere, but I don't remember reading the reason." When asked by counsel, "Do you remember anything, Mr. Jordan, about what has happened in this case? ... The history of the case?", Jordan responded: "No ... No, I don't ... Well, I told you about all I remember about it because I didn't read the whole article." Jordan also told counsel that as far as he was concerned the article did not have any effect on him and that in judging appellant's guilt or innocence "it's as if I had not read that newspaper article." Jordan later told one of the prosecuting attorneys that in judging appellant's guilt or innocence he could set aside anything that he might have read in the newspaper article. After the State accepted Jordan, appellant's counsel used a peremptory strike. Counsel then perfected a bill of exceptions regarding what Jordan remembered about the newspaper article.

The informal bill of exception reflects that Jordan testified that he did not remember the article mentioning anything about appellant having been previously convicted; about a confession; or that appellant's previous conviction had been reversed on appeal.

Appellant's counsel then stated to the trial judge that had he been permitted to ask Jordan the questions that he asked him when he perfected his informal bill of exception, and obtained the answers that he did, he would not have used a peremptory strike on Jordan. Given the fact that counsel had actually obtained the answers he sought, even though by way of an informal bill of exception, we do not understand how this would have made a difference in his decision making process of whether or not to use a peremptory strike on Jordan.

However, we do agree with appellant's counsel that it is well established, and almost unecessary to repeat, that the right of an accused or his attorney to question a venireperson freely and broadly is a State constitutional right that ensures that counsel or his client can intelligently exercise the client's allocated peremptory challenges, and should never be unnecessarily limited or restricted. See, for example, *Smith v. State*, 703 S.W.2d 641, 643 (Tex. Cr.App.1985); *Adams v. State*, 577 S.W.2d 717 (Tex.Cr.App.1979), rev'd on other grounds, *Adams v. Texas*, 448 U.S. 38, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980), on remand, see *Adams v. State*, 624 S.W.2d 568 (Tex.Cr.App.1981); *Mc Manus v. State*, 591 S.W.2d 505 (Tex.Cr.App.1980).

Although the accused or his counsel must be given great latitude in questioning the venirepersons, the State constitutional right is not a constitutional right without any limitations or restrictions, as the trial judge is vested with the authority to impose reasonable restrictions on the accused's exercise of his voir dire examination, but "this salutary result [dispatching court business with promptness and expedition] must never be attained at the risk of denying to a party on trial a substantial right." *De La Rosa v. State*, 414 S.W.2d 668, 672 (Tex.Cr.App.1967), quoting *Carter v. State*, 100 Tex.Cr.R. 247, 272 S.W. 477 (1925). Thus, without some sort of control by the trial judge on the voir dire examination, the voir dire examination might never end and the trial might never start. Any restriction that is imposed by the trial judge, however, is always subject to the abuse of discretion standard of review. See, for example, *Smith v. State*, supra, at 643; *Mc Manus v. State*, supra; *Clark v. State*, 608 S.W.2d 667 (Tex.Cr.App.1980); *Adams v. State*, supra; *Bodde v. State*, 568 S.W.2d 344 (Tex. Cr.App.1978); *Garcia v. State*, 581 S.W.2d 168 (Tex.Cr.App.1979); *Abron v. State*, 523 S.W.2d 405 (Tex.Cr.App.1975); *Smith v.*

*State,* 513 S.W.2d 823 (Tex.Cr.App.1974); and *Grizzell v. State,* 164 Tex.Cr.R. 362, 298 S.W.2d 816 (1957). In making the determination whether the trial court abused its discretion in restricting the appellant's voir dire examination, the test is whether the question or questions sought to be asked are proper. "If the question was proper and the defendant was prevented from asking it, then harm is presumed because the defendant could not intelligently exercise his peremptory challenges without the information gained from an answer." *Smith v. State,* supra, at 643. "A question is proper if it seeks to discover a juror's views on an issue applicable to the case." *Smith,* supra, at 643.

In *Smith v. State,* supra, the trial judge denied the accused's counsel's request to question the venirepersons about what material they had read regarding the defense of insanity, after he had informed the venirepersons that the accused was going to raise that defense during the trial. This Court held that the trial judge abused his discretion because counsel was entitled to question the venirepersons on this subject. Also see *Robinson v. State,* 720 S.W.2d 808 (Tex.Cr.App.1986).

In *Smith,* supra, this Court was also confronted with whether the trial judge had abused his discretion when, after several members of the jury panel raised their hands indicating that they "had read or heard something or had some personal knowledge of the facts of this offense," counsel requested that he be allowed to question the venirepersons on this subject. The trial judge denied the request. This Court held that the trial judge abused his discretion: "Appellant was entitled to know the specific knowledge the panel had concerning the instant case through pretrial publicity. Appellant only sought to question those individuals who indicated that they already had knowledge of the instant case. Such a question is proper and, therefore, should have been allowed." (644).

We have previously discussed the testimony of the venirepersons Kendrick and Jordan. We will now review the voir dire examination of venirepersons Banks, Arnold, Powers, Bates, Falt, Sallas, Collins, Mc Quilkin, and Laake.

Arnold testified that she had read the newspaper article, "I just scanned it"; that she had not formed any opinion therefrom as to appellant's guilt or innocence; and that she could set aside anything that she might have read. We do not find where counsel for appellant asked Arnold any questions about her having read the newspaper article.

Powers testified that he had read the newspaper article, but he also testified that he did not form any opinion or conclusion as to appellant's guilt or innocence from having read the article, and further testified that he would disregard anything that he had read about the case and would judge the case from what he heard from the witness chair and the exhibits admitted into evidence. Counsel questioned Powers about his having read the newspaper article. Powers told counsel that he remembered that the article stated that appellant "was convicted in '75 or '77, something like that, of murder and sentenced to death. Okay his case was overturned because of a confession that was improperly, that was improper or fake or something, I don't know what it was, and this is about all I know about it, and it's talking about, I guess that's about it." Counsel had Powers repeat his answers by asking him individual questions regarding the answers he had given. As to a confession, Powers stated: "I have seen situations where myself I would sit down and confess to anything that came up, and I'm not joking." Counsel then challenged Powers and the trial judge overruled the challenge. Powers soon thereafter stated that because he was aware that appellant had confessed, such "would always be in my mind because nobody can forget nothing deliberately." Counsel did not renew his challenge. When questioned by one of the prosecutors, Powers stated that he would follow the trial judge's instructions "not to consider anything that he might have read or heard"; that he would judge the case only from what he heard "in the form of witnesses and exhibits that the Court might allow into evidence"; and that he had

formed no opinion as to appellant's guilt or innocence "based upon what he had read." When again questioned by appellant's counsel, Powers stated that he had no opinion whether appellant was guilty or innocent. After Powers stated that he "will do his best to ignore [what he had read regarding appellant having given a confession], but there is no way I can completely forget anything because I can remember things too far back", appellant's counsel then challenged Powers for cause, which challenge was overruled. We pause to point out that appellant does not complain on appeal that the trial judge erred by not sustaining his challenge for cause as to Powers; his complaint on appeal is directed to the trial judge's instruction regarding questioning the venirepersons in detail about their having read the newspaper article.

Bates also stated that he had read the newspaper article, "I remember reading it, but, you know, I don't remember that much of the details because I didn't digest it real hard because, you know, whenever I read it I knew what was happening, what was coming down (that because he knew he had been summoned as a prospective juror in a criminal case appellant's case might be that case)," but that he had formed no opinion as to appellant's guilt or innocence as a result of reading the article. Appellant's counsel questioned Bates about his having read the newspaper article. Bates testified that he recalled from the article that the case "was tried in Gregg County and was overruled as I remember, you know, was appealed, an appeal court or something overruled it." Bates could not recall, however, what the article specifically stated as to why the case was "overruled", "It means it was reversed for some type error." Bates further testified that as a result of reading the article he did not have "any feelings concerning the defendant either one way or the other." When Bates testified on appellant's informal bill of exception, he testified, in addition to what he had already stated, that he did not remember the article containing any reference to a confession.

Falt testified that she had read the newspaper article but that she did not form an opinion as to appellant's guilt or innocence after having read the article, and could set aside anything that she might have read in judging the merits of the case. When appellant's counsel questioned Falt, she stated that she recalled the article stating that appellant "had been tried, and convicted, and this was a retrial of the trial itself, and that the victim was an elderly woman." As to the fact that appellant had been previously convicted, Falt stated that "I don't really know what [that means] to me," but that "if he is having another trial, there was some doubt in the first one"; that the first trial did not have anything to do with this trial; that she could put what she had read "out of her mind"; and that it would not influence her.

Sallas stated that she had "glanced at the headlines whenever it first came out in the paper"; "other than that, I don't know anything about, anymore about the case"; that she "could set that aside and try the case strictly upon the facts and evidence that she might hear in the courtroom"; and that she had not formed any opinion or conclusion as to appellant's guilt or innocence. Sallas told appellant's counsel that her husband had read the entire article, "said something or another about it being changed, you know, from Longview and up that way and then changed for you, but as far as anything else in it, I don't know any of it." We do not find in the record where counsel sought to further question Sallas for purposes of an informal bill or otherwise.

Collins stated that she, too, had only glanced at the headlines, "Usually what I look at is the headlines, obituaries and who is getting married on Sundays (and this time her daughter's wedding picture was in the paper)." Collins recalled from the headline that the case had been transferred to Angelina County from Gregg County. We do not find in the record where counsel sought to further question Collins for purposes of an informal bill or otherwise.

Mc Quilkin stated that she, too, recalled reading the headline, "but I didn't pay any

attention to the article about a case being moved here ...''; that she had not formed therefrom any opinion as to appellant's guilt or innocence; that she would decide the case only on what she heard in the courtroom. The evening before she had read an article that had appeared in the newspaper and recalled "just some juror had been chosen." We do not find in the record where counsel sought to further question Mc Quilkin for purposes of an informal bill or otherwise.

Laake stated that he had read the newspaper article, see "Appendix A", "that the trial was going to be held here. Other than that nothing"; that he had not formed any opinion therefrom as to the guilt or innocence of appellant; and that he would judge the merits of the case from what he heard in the courtroom. Laake told appellant's counsel that he remembered reading that "Lufkin had been chosen for the place for the trial, and I really don't recall whether there was any other items in there ... I did read that the thing had already been tried, that the defendant had been convicted and that it was going to be tried ... that it was going to be retried because the defendant was convicted by a plea of guilty, a guilty plea ... that he was sentenced to death ... that he [Laake] had not in any way formed a suspicion one way or the other as to whether or not the defendant is guilty of anything ... that he could set aside whatever he had read and not let it in any way interfere with his deliberations in a case of this nature ..." When it came time for appellant's counsel to accept or reject Laake as a juror in this cause, the record reflects the following: "We would be happy to take [Laake]."

Given the above summaries, we find that this is clearly not the situation where if a venireperson states that he or she had read a newspaper article that concerned the accused's case the trial judge summarily refused to permit the accused's counsel the opportunity to further pursue the subject. See and compare *Mc Manus v. State,* supra. Given the state of this record, we are unable to state that the trial court's instruction in this cause prevented counsel from exploring with the venirepersons who

stated that they had read the newspaper article, what they were told about the article, and what effect, if any, the newspaper article might have had on them. We also find and hold that appellant's counsel was given sufficient leeway in his attempt to spark the memories of the venirepersons who had read the article, or had been told about the article, so that they might recall more details of the article than they had stated that they could recall. We find that the named venirepersons' memories were simply not capable of becoming ignited by counsel's spark. Judging the voir dire examination of the complained about venirepersons in the totality of the circumstances, we cannot realistically state that the trial judge in this cause improperly restricted appellant's counsel's voir dire examination of the venirepersons. Appellant's second ground of error is overruled.

We now address appellant's third ground of error, that "The Trial Court erred in denying the Appellant's Motion for Change of Venue [from Angelina County]."

A clear reading of the record makes it obvious to us, contrary to what the special prosecuting attorney in this cause concludes, that the newspaper article, see "Appendix A", apparently from the first time that appellant's counsel saw it, preyed heavily on his mind as to whether or not appellant could receive a fair and impartial trial in Angelina County, to the point that after the 99th prospective juror was examined, counsel filed a motion for change of venue to transfer the cause from Angelina County. Although we might sympathize with counsel's inner thoughts and feelings, given the state of the record, we are compelled to disagree with him that the trial judge erred in overruling his motion for change of venue.

Appellant and his attorney asserted in the motion for change of venue that "prior to the beginning of Voir Dire selection of the Jury and subsequent to that date, that the news media of Angelina County has published numerous stories within the local press that include allegations of fact and have stated the same to be that the Defendant has previously been tried and con-

victed of the offense of which he is presently on trial; that he received a sentence of death; that the Court of Criminal Appeals in Austin reversed the original decision; and that the original decision was reversed because of the confession given by the Defendant."

Although we find that appellant's motion for change of venue does not comply with the provisions of Article 31.03(a), V.A.C.C.P., which governs the requirements of a defendant's motion for change of venue, because it was not accompanied by affidavits from at least two credible persons and appellant did not properly swear to the allegations in the motion, and thus is not subject to review, we will nevertheless address appellant's ground of error.

■ The State asserts at the outset that appellant's motion for change of venue was untimely filed under the provisions of Article 28.01, § 1 (7), V.A.C.C.P., which governs the filing of pretrial motions. This contention is without merit in light of this Court's decision of *Revia v. State*, 649 S.W.2d 625 (Tex.Cr.App.1983), which held that "the limitations of Article 28.01, supra, can no longer bar consideration of a change of venue motion." Also see *Enriquez v. State*, 429 S.W.2d 141 (Tex.Cr.App.1968). This is because a change of venue is one of constitutional dimension. Thus, the requirements of Art. 28.01, supra, that govern the filing of pretrial motions, must give way to the constitutional consideration that an accused must receive a fair trial. See *Rivea*, supra, and *Henley v. State*, 576 S.W.2d 66 (Tex.Cr.App.1978). Also see *Rideau v. Louisiana*, 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663 (1963). We do not answer today, regardless of the limitations of Art. 28.01, supra, the question of when it is too late to file a motion for change of venue.

The record reflects that the only evidence appellant presented at the hearing on his motion consisted of several newspaper articles, including the one that we have attached to this opinion, see "Appendix A", a transcription of a radio broadcast, and the voir dire examination of the prospective jurors up to that point during the trial.

The State presented testimony from the local elected district attorney who testified that in his opinion there was not any great prejudice against appellant in Angelina County that would prevent him from receiving a fair and impartial trial. The trial judge overruled the motion.

We first observe that none of the jurors who served in this cause was disqualified from serving because of having read any of the newspaper articles or heard the radio broadcast.

■ We agree with appellant that "due process provides for a change of venue when a Defendant demonstrates his inability to obtain an impartial jury and fair trial at the place of venue." See *Groppi v. Wisconsin*, 400 U.S. 505, 91 S.Ct. 490, 27 L.Ed.2d 571 (1971). In making this statement, appellant recognizes that one seeking to have his conviction nullified on the ground that he was denied a fair trial by an impartial jury due to adverse pretrial publicity ordinarily must demonstrate an actual, identifiable prejudice attributable to that publicity on the part of members of his jury. See the cases cited in *Mayola v. Alabama*, 623 F.2d 992 (5th Cir.1980), at page 996. However, the fact of publicity in the news media does not, without more, establish prejudice or require a change of venue. See *Freeman v. State*, 556 S.W.2d 287 (Tex.Cr.App.1977); *Philpot v. State*, 169 Tex.Cr.R. 91, 332 S.W.2d 323 (1960). The test to be applied is "whether outside influences affecting the community's climate of opinion as to a defendant are so inherently suspect that the resulting probability of unfairness requires suitable procedural safeguards." *Bell v. State*, 582 S.W.2d 800 (Tex.Cr.App.1979). Also see *Ussery v. State*, 651 S.W.2d 767 (Tex.Cr.App.1983); *Mc Manus v. State*, supra.

■ We have carefully examined the exhibits and the voir dire examination of the prospective jurors that occurred prior to the time the hearing was held on appellant's motion, see *ante*, as well as after when the hearing was held. We do not find therefrom that appellant's case was caused to be "utterly corrupted by press coverage." We also find that the exhibits

reflect fair and objective reporting. The testimony of the prospective jurors do not reflect or indicate that appellant's trial was "utterly corrupted by press coverage". See *Murphy v. Florida,* 421 U.S. 794, 798, 95 S.Ct. 2031, 2035, 44 L.Ed.2d 589 (1975). We find and hold that appellant has failed to establish or demonstrate that the trial setting was inherently prejudicial or that the jury selection process permitted an inference of actual prejudice as a result of the newspaper articles or the radio broadcast. See *Dobbert v. Florida,* 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977). Even conceding that there might have been extensive knowledge in the community of either the crime or the appellant, which we do not find, this is not sufficient by itself to render a trial constitutionally unfair. We find that, like the defendant *Dobbert,* supra, appellant is asking us to presume unfairness of constitutional magnitude at his trial solely on the basis that the community was made aware of the fact of his previous reversal and the charges against him. This we decline to do.

Appellant has failed to convince us that under the totality of the circumstances he sustained a constitutional violation with respect to the pretrial and trial publicity. We totally disagree with appellant that "The media coverage of the previous trial which was published the day before the Voir Dire examination began created so great a prejudice against the Appellant that he could not obtain a fair and impartial trial." We also totally disagree with appellant that "The media coverage, coupled with the limitation placed on Voir Dire, which prevented full disclosure, left the prejudice in tack and in the jury box." Also see *Bell v. State,* supra, (Held, motion for change of venue properly overruled even though a newspaper article mentioned that the defendant had confessed to the crime).

Appellant's third ground of error is overruled.

Appellant asserts in his last thirteen grounds of error that the trial judge erred in either not sustaining his challenges for cause as to certain named prospective jurors or in sustaining the State's challenge for cause as to one prospective juror. Once again, we must disagree with appellant.

In grounds of error numbered four, five, six, seven, and eight appellant complains that the trial judge erroneously failed to sustain his challenges for cause as to venirepersons James Twohig, Linda Joy Arnold, Lillian Mc Quilkin, Austin Anderson, and Fred Laake, on whom he used peremptory strikes after his challenges for cause were overruled. The challenges for cause were made pursuant to the provisions of Article 35.16(c)(2), V.A.C.C.P., which provides that a challenge for cause may be made by the defense for the following reason: "That [the venireperson] has a bias or prejudice against any of the law applicable to the case upon which the defense is entitled to rely, either as a defense to some phase of the offense for which the defendant is being prosecuted or as a mitigation thereof or of the punishment thereof." Appellant challenged venirepersons Twohig, Arnold, Mc Quilkin, Anderson, and Laake on the ground that they were biased against assessing the minimum punishment for the possible lesser included offense of murder, which is five years, probated.

It is now axiomatic that a prospective juror who states that he cannot consider a probated sentence for the lesser included offense of murder, and the defendant makes it known that he is eligible for probation in the event he is convicted of that offense, see *Mays v. State,* 726 S.W.2d 937, 947 (Tex.Cr.App.1986), is subject to challenge for cause by the defendant because such demonstrates an inability on the part of the prospective juror to consider the full range of punishment for that offense. See, for example, *Barrow v. State,* 688 S.W.2d 860 (Tex.Cr.App.1985); *Jordan v. State,* 635 S.W.2d 522 (Tex.Cr.App.1982). A venireperson, however, is not required to state that he could consider a probated sentence for the offense of murder in a particular factual situation. If the prospective juror is not disqualified as a matter of law, and states that he can set aside his bias against the law that governs the punishment for a particular crime, then the trial

court's refusal to sustain the defendant's challenge for cause will be reviewed in light of all of the answers the prospective juror gives. See *Clark v. State*, 717 S.W. 2d 910, 917 (Tex.Cr.App.1986); *Anderson v. State*, 633 S.W.2d 851 (Tex.Cr.App.1982).

Our search of that part of the record that relates to action by the District Clerk of Angelina County has yet to reflect or reveal where appellant filed, prior to the voir dire examination, a motion for probation. However, that part of the record that relates to action by the District Clerk of Gregg County, the county from which the case was transferred, reflects that appellant filed an application for probation. Thus, the record reflects that in the event appellant was found guilty of murder he was eligible for probation, at least for filing purposes.

The record of the voir dire examination reflects or indicates that although the challenged prospective jurors expressed varying degrees of bias against a probated punishment for the lesser included offense of murder, they nevertheless stated that they could consider assessing such punishment for the offense of murder in a proper case. Thus, they were not disqualified as a matter of law. We find and hold that given the totality of their answers the trial judge did not err in overruling appellant's challenges for cause. Also see *White v. State*, 629 S.W.2d 701 (Tex.Cr.App.1981); *Barefoot v. State*, 596 S.W.2d 875 (Tex.Cr.App. 1980); *Simmons v. State*, 594 S.W.2d 760 (Tex.Cr.App.1980); *Von Byrd v. State*, 569 S.W.2d 883 (Tex.Cr.App.1978); *Moore v. State*, 542 S.W.2d 664 (Tex.Cr.App.1976); cf. *Hernandez v. State*, 643 S.W.2d 397 (Tex.Cr.App.1982); *Jordan v. State*, supra. Appellant's grounds of error numbered four, five, six, seven, and eight are overruled.

■ Appellant asserts in his grounds of error numbered nine, ten, eleven, twelve, thirteen, fourteen, and fifteen that prospective jurors Hollon Sanders, James Banks, Sue Kendrick, Alvin Powers, James Bates, Louise Falt, and Fred Laake were subject to his challenges for cause because of their exposure to prejudicial pretrial publicity.

We have previously pointed out the exposure that Banks, Kendrick, Powers, Bates, Falt, Sallas, Mc Quilkin, and Laake sustained as a result of their reading part or all of the newspaper article, see "Appendix A." When it came time to examine Sanders, appellant had exhausted his peremptory strikes. Prior to and after accepting Sanders as a juror, counsel for appellant challenged Sanders on the basis of his having heard of the case through articles that had been published in the local newspaper, *The Lufkin News*, which is the only regular newspaper in Lufkin. Appellant's challenge was overruled. Sanders testified that he read the newspaper when he received it until he was instructed by the trial judge not to read it. As to the article that is in "Appendix A", Sanders testified that he recalled that the article referred to "a lady was killed and that the defendant was involved in the killing", that the trial was "coming" to Lufkin, that appellant had pled guilty, had been tried, was getting a new trial because of a "volunteered statement" or a "volunteered plea", and that he had been sentenced to death, but that he, Sanders, could "presume that what he had read in this case in that newspaper was wrong." Sanders also testified: "I would have to hear this case before I could have my opinion, hear all the witnesses, hear all the evidence both ways." Sanders felt that he could "forget what he read in the newspaper", and that he didn't think the newspaper article would influence him.

We have previously pointed out that if from reading a newspaper account of the accused's case the prospective juror forms such a conclusion as to the guilt or innocence of the defendant as would influence him in his action in deciding the case, see Art. 35.16(a)(10), supra, the juror is disqualified as a matter of law. However, the statute also provides that if the prospective juror has formed a conclusion, but not as to the accused's guilt or innocence, he shall be further examined as to how his conclusion was formed, and the extent to which it will affect him. If the juror states that he believes he is able, notwithstanding his conclusion, to render an impartial verdict upon the law and the evidence, the court, if

satisfied that the juror may be impartial and will render such verdict, may, in its discretion, admit him as competent to serve in such case. If the court, in its discretion, is not satisfied that the juror is impartial, the juror shall be discharged by the court.

We have previously pointed out, see our discussion concerning appellant's second and third grounds of error *ante,* that merely because a prospective juror might have read a newspaper article about the accused's case that this will not, standing alone, disqualify him from serving as a juror. We find that the above venirepersons never unequivocally stated that they had formed a conclusion as to the guilt or innocence of appellant as would influence them in reaching a verdict. Thus, they were not disqualified as a matter of law from serving as jurors in this cause. Appellant's grounds of error numbered twelve, thirteen, fourteen and fifteen are overruled.

██ In his final and sixteenth ground of error, appellant asserts that the trial judge erred in sustaining the State's challenge for cause as to prospective juror Jim J. Cummins. Although we find that it is highly questionable whether appellant timely and properly objected to the trial judge's sustaining the State's challenge for cause, see *Crawford v. State,* 617 S.W.2d 925 (Tex.Cr.App.1980); *Chambers v. State,* 568 S.W.2d 313 (Tex.Cr.App.1978), given the fact that the maximum penalty of death has been assessed, we will assume for argument purposes that appellant timely and properly objected to the trial judge's sustaining the State's challenge.

We find appellant's contention totally without merit because Cummins unequivocally testified that he did not believe in the death penalty, that he could not conceive of a set of circumstances where he could consider giving the death penalty, and that he would not set aside his feelings against the death penalty and base his decision on the evidence that would be presented. Appellant's sixteenth ground of error is overruled.

After having carefully reviewed all of appellant's grounds of error, and finding that none rise to the level of reversible error, we affirm the trial court's judgment of conviction.

ONION, P.J., concurs in the result.

DUNCAN, J., not participating.

APPENDIX   A

**Cloudy**

Scattered thunderstorms through Monday with heavy rain possible. Highs in the 90s, lows in the 70s.

HIGH—91   LOW—75

# THE LUF

A Cox Newspaper — Lufk

— Page 12A
— Page 3.

# KIN NEWS

n, Texas, Vol. 75, No. 193 — 35 Cent.

Sunday

Lord, grant that I may always desire more than I can accomplish. — Michelangelo

JUNE 14, 1981

# Longview trial moved to Lufkin

**By PHILIP BRASHER**
**Lufkin News Writer**

Gregg County prosecutors — bankrolled, it has been suggested, by the murder victim's wealthy son — try this week for the second time to close a gory and bizarre, six-year-old East Texas murder case. This time they'll try in Lufkin.

Jury selection begins Monday in the second trial of Joseph Stanley Faulder, a transplanted-Canadian accused of blundgeoning a prominent 75-year-old Gladewater woman to death in 1975 during a burglary attempt. Lufkin District Judge David Walker will hear the capital murder case.

A Longview jury convicted Faulder of the killing in 1978 and sentenced him to death, but the Texas Court of Criminal Appeals reversed the conviction, throwing out a confession Faulder allegedly gave police.

The U.S. Supreme Count refused in 1980 to hear the prosecution's appeal. Faulder's new trial was moved to Lufkin and Walker's 159th District Court.

Faulder's attorney, Vernard Solomon of Marshall, made a desperate effort last week to stop the trial from starting, appealing to U.S. District Judge William Wayne Justice on grounds that it would put Faulder in double jeopardy. Judge Justice denied the appeal.

A Gregg County district judge issued a gag order in April on everyone involved in the case, including the prosecution, defense and court clerks.

The victim's son, Gladewater oilman Jack Phillips, was accused in pre-trial testimony of conspiring with "other influential persons" to convict his mother's accused murderer and of financing the prosecution team.

In fact, according to testimony, Phillips has hired former Gregg County District Attorney Odis Hill, a "notable private investigator," and attorney Phil Burleson to prosecute Faulder in Lufkin. Burleson assisted famed defense attorney Richard "Racehorse" Haynes in the murder trial of Fort Worth millionaire T. Cullen Davis.

Hill tried Faulder in the first trial.

"I think (Phillips) is bankrolling the prosecution," an attorney for one of Faulder's co-defendants testified last month in Longview. "He has hired two of the finest lawyers."

Faulder and a Tyler woman, Lynda Ziegler "Stormie" McCann, were arrested in April, 1977 and charged with murder, nearly two years after Inez Phillips was found dead in her bed — a knife buried to the hilt in her chest.

Mrs. McCann is expected to be a key witness against Faulder.

She was convicted of burglary in the case, but like Faulder's, the conviction was reversed. She later pleaded guilty, received probation, agreed to testify against Faulder and was offered $10,000 in relocation expenses to move where Faulder couldn't find her.

Each prospective juror in Faulder's Lufkin trial will be interviewed individually, Judge Walker said.

CLINTON, Judge, concurring.

Concurring in the result, I write to track relevant developments in our case law pertaining to the third ground, claiming error in denial of his motion for change of venue, and then to comment on the manner in which the Court disposes of that ground.

The Sixth Amendment, made applicable to the states through the Due Process Clause in the Fourteenth Amendment, guarantees that in all criminal prosecutions the accused shall enjoy the right to "an impartial jury." So do Article I, § 10, Bill of Rights, and Article 1.05, V.A.C.C.P. "[W]here because of prejudicial publicity .... *the community from which the jury is to be drawn* may already be permeated with hostility toward the defendant, .... under the Constitution a defendant must be given an opportunity to show that a change of venue *is* required in *his* case." [1] *Groppi v. Wisconsin*, 400 U.S. 505, 509–510, 511, 91 S.Ct. 490, 493, 494, 27 L.Ed.2d 571 (1971).[2] Therefore, the constitutional issue raised by the motion is whether, on account of adverse pretrial publicity concerning his impending trial, appellant was entitled to a change of venue in order to be afforded a fair trial by an impartial jury.

Formerly the Court was "reluctant" to reverse for failure to change venue "in the absence of any showing that any prejudice against the accused found its way into the jury box." *Philpot v. State*, 332 S.W.2d 323, 324 (Tex.Cr.App.1960). Illustrative is *Moon v. State*, 169 Tex.Cr.R. 14, 331 S.W.2d 312 (1959):

"It has been the consistent holding of this Court [citatons omitted] that in order to require a reversal for refusal to change venue, there must be a showing that prejudice against the accused found its way into the jury box at his trial." *Id.,* at 313. Thus quoting *Moon* in affirming a misdemeanor conviction in *Mason v. State*, 375 S.W.2d 916 (Tex.Cr.App.1964), the Court "likewise here find[s] no evidence in this record that prejudice against appellant found its way into the jury box at his trial." *Id.,* at 918.[3] Also following *Moon,* in *Taylor v. State,* 420 S.W.2d 601 (Tex.Cr.App 1967), the Court called it "identifiable prejudice," *id.,* at 604.

By the time *Mason* made its way to the United States Court of Appeals for the Fifth Circuit, the Supreme Court had decided such cases as *Rideau v. Louisiana,* 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663 (1963); *Turner v. Louisiana,* 379 U.S. 466, 85 S.Ct. 546, 13 L.Ed.2d 424 (1965); *Estes v. Texas,* 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965), and *Sheppard v. Maxwell,* 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966). In the latter the Supreme Court admonished, "Given the pervasiveness of modern communications and the difficulty of effacing prejudicial publicity from the minds of jurors, the trial courts must take strong measures to ensure that the balance is never weighed against the accused." *Id.,* at 362, 86 S.Ct., at 1522. Its specific holding: "[W]here there is a reasonable likelihood that the prejudical news prior to trial will prevent a fair trial, the judge should continue the case until the threat abates, or transfer it to another county not so permeated with publicity." *Ibid.* So, in *Pamplin v. Mason,* 364 F.2d 1 (CA 5 1966), the court applied "the *Irvin* holding with the gloss of *Rideau, Estes* and *Sheppard*" to hold:

"The test is no longer whether prejudice found its way into the jury box at the trial, as the Texas court stated in peti-

---

**1.** All emphasis is mine throughout unless otherwise noted; above the latter two underscorings are in the opinion of the Supreme Court.

**2.** While at page 21 the majority expresses agreement with a statement apparently taken from appellant's brief and then directs the reader to "See *Groppi v. Wisconsin,*" the reader must understand that the *Groppi* court wrote not of "inability to obtain an impartial jury," but rather of methods to "assure an impartial jury [from] the community.... already permeated with hostility toward the defendant." In other words, the temper of the community—not of venirepersons—is to be gauged.

**3.** The Court also noted that it consistently held that "our statutes, which do not provide for a change of venue in misdemeanor cases, are not unconstitutional." *Ibid.* However, the Supreme Court would soon change that notion by holding a similar statutory prohibition in Michigan unconstitutional. *Groppi,* supra.

tioner's appeal. ... As we read the Supreme Court cases the test is: Where outside influences affecting the community's climate of opinion as to a defendant are inherently suspect, the resulting probability of unfairness requires suitable procedural safeguards, such as a change of venue, to assure a fair and impartial trial."

*Id.,* at 5. That is substantially what the Supreme Court would later elucidate in *Groppi v. Wisconsin,* supra.

Hard on the heels of *Pamplin v. Mason,* supra, the Court gave short shrift to a claim of prejudicial pretrial publicity because the record did not show he had exhausted his peremptory challenges, that any venireperson who had formed an opinion as his guilt of innocence served on the jury and because the Court had consistently held that publicity, alone, does not establish prejudice. *Ward v. State,* 427 S.W.2d 876, 881 (Tex.Cr.App.1968). Regarding *Pamplin v. Mason,* supra, the Court merely said that "as we construe the decision...., the record herein does not sustain appellant's contention that he 'was tried largely by the news media,' or was denied due process of law by the court's failure to change the venue." *Ibid.*

Shortly, however, the Court correctly recognized that the matter of change of venue "has become a question of constitutional dimension under the recent decisions of the Supreme Court of the United States.... and under the decision.... in *Pamplin et al. v. Mason,* 364 F.2d 1." *Enriquez v. State,* 429 S.W.2d 141 (Tex.Cr. App.1968). The Court observed that independent proof of media coverage had not been made, but that a good number of venirepersons stated they had seen or heard about the offense although none related exactly what. Thus an issue of outside influence of prejudicial pretrial publicity was not really raised. But instead of deciding the case on that basis, upon examination of some 1500 pages of voir dire the Court noted that the trial judge "exercise extreme caution and excused many of the venire, who under the usual and accepted practice would have been selected." *Id.,* at 141.

Then there was *Bridges v. State,* 471 S.W.2d 827 (Tex.Cr.App.1971), in which the Court not only alluded to the "current test" of *Enriquez,* supra, but quoted extensively from *Pamplin v. Mason,* supra, pointed out that there was plenty "independent" proof of pretrial publicity about the defendant and an undercover police woman, but resolved the issue as follows:

"This, standing alone, would not authorize a reversal on the grounds that prejudice against this particular appellant was shown in the community. We do not have before us, as we did in *Enriquez v. State,* supra, a transcription of the examination of the venire. We have no way of knowing how difficult it was to secure a jury. The trial court [held the matter] in abeyance during the selection of the jury.... [to change venue] on his own motion if it became obvious that a fair trial could not be had. We have concluded that appellant failed to show reversible error in.... overruling his motion for a change of venue at the time the selection of the jury began."

*Id.,* at 829.

In those two cases the Court either never did not grasp the "presumptive prejudice" test enunciated in *Pamplin v. Mason,* or was content merely to give it lip service while continuing to look at voir dire for actual prejudice. See *Morris v. State,* 488 S.W.2d 768 (Tex.Cr.App.1973), in which the Court calculated how many venirepersons were excused and why, quoted from *Beck v. Washington,* 369 U.S. 541, 82 S.Ct. 955, 8 L.Ed.2d 98 (1962) ("there could be no constitutional infirmity if petitioner actually received a trial by an impartial jury"), set out the ubiquitous excerpt from *Pamplin v. Mason,* supra, and paraphrased *Irvin v. Dowd,* 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961) (jurors need not be totally ignorant of current facts and issues of the day and can be expected to have formed some impression or opinion about an important criminal case), to find defendant was "tried by jurors who had no opinion as to his guilt," *id.,* at 772.

On the same June day in 1975 the Court delivered two strikingly contrasting unanimous opinions on the subject. *Mitchell v. State,* 524 S.W.2d 510 (Tex.Cr.App.1975), and *Adami v. State,* 524 S.W.2d 693 (Tex. Cr.App.1975).

*Mitchell v. State,* supra, is another typical short shrift disposition: appellant did not discharge his heavy burden of proving such prejudice in the community that the likehood of obtaining a fair and impartial is doubtful in that he "has not shown that he was required to exhaust his challenges and accept an objectional juror; nor is there a transcription of the voir dire examination of prospective jurors so that this Court might inspect it for evidence of prejudice in the community." *Id.,* at 514.

In *Adami v. State,* supra, the trial court conducted an extensive hearing and appellant presented a "pattern" demonstration of massive pretrial publicity. The judge deferred ruling, announcing that he would wait until after voir dire "in order to determine the difficulty of selecting a fair and impartial jury." The Court said that action was not error. Even though the opinion reflects its recognition that "the test to be applied by the court is no longer whether prejudice found its way into the jury box," it quotes treatment of the cases by *Morris v. State,* supra, and reports that the Court has considered the evidence and "read the voir dire of the jury panel and notices the lack of difficulty in securing a qualified jury," to conclude that "when the test set forth in the cases is applied," there was no abuse of discretion in overruling the motion for change of venue. *Id.,* at 704.

**4.** "The law authorizing a change of venue proceeds upon the fact that, notwithstanding the most searching questions may be applied to the juror in regard to his bias or prejudice for or against the accused, or whether there is formed in his mind such a conclusion as to guilt or innocence of the accused as will influence him in finding a verdict, still there may be in the county such a prejudice existing as to render it improbable that the defendant could receive a fair trial. If it be conceded that all obnoxious jurors could be kept off the jury by being questioned in regard to challenges for cause, then it would seem the law providing for a change of venue would be useless, and should have no place in our procedure[.]"

*Garcia v. State,* 537 S.W.2d 930 (Tex.Cr. App.1976) is much like *Mitchell v. State,* supra, except there was a record of voir dire which the Court said it had read and "noticed the lack of difficulty in securing a qualified jury." *James v. State,* 546 S.W. 2d 306 (Tex.Cr.App.1977), is a carbon copy of *Garcia. Id.,* at 309.

Finally, after setting out its admonition and holding, see *ante,* at 344–345, the Court turned *Sheppard v. Maxwell* on its head, *viz:*

"Thus, we find it proper that we consider the void dire of the prospective jurors to determine whether appellant was tried by an 'impartial jury free from outside influences.' See *Adami v. State, supra; Pamplin v. Mason, supra.*"

*Freeman v. State,* 556 S.W.2d 287, 296 (Tex.Cr.App.1977). Accord: *Von Byrd v. State,* 569 S.W.2d 883, 890 (Tex.Cr.App. 1978). Contra: *Henley v. State,* 576 S.W. 2d 66, 71, 73 (Tex.Cr.App.1978); *Meyers v. State,* 39 Tex.Cr.R. 500, 46 S.W. 817 (1898); *Randle v. State,* 34 Tex.Cr.R. 43, 28 S.W. 953 (1894).[4]

Where in a hearing on a motion for change of venue some witnesses testified that in their opinion on account of prejudicial pretrial publicity accused could not get a fair trial, while others expressed an opinion that a fair trial was possible, without any mention of voir dire examination the Court simply noted "the trial judge was presented with a fairly evenly divided choice" and therefore the court did not abuse its discretion in denying the motion. *Ransonnette v. State,* 522 S.W.2d 509, 512 (Tex.Cr.App.1975), and cases cited therein;

*Id.,* 28 S.W. at 954

".... The prejudice in the county may be such that jurors will qualify themselves who are not impartial, and a jury obtained in whole or in part of such jurors. This is demonstrated by the record in this cause. .... Now, these instances show beyond question that, notwithstanding these tests, there may be such prejudice in the county that jurors will be qualify who have deliberately formed a conclusion that the accused is guilty, and should be punished. .... But, even should a jury be obtained, it does not follow that it did not contain prejudiced jurors." *Id.,* 28 S.W. at 955.

*Barefoot v. State,* 596 S.W.2d 875, 880–881 (Tex.Cr.App.1980) (also "instructive" to examine voir dire); *Eckert v. State,* 623 S.W.2d 359, 363–364 (Tex.Cr.App.1981) (examine evidence and voir dire to determine abuse of discretion); *Ussery v. State,* 651 S.W.2d 767, 772 (Tex.Cr.App.1983); see also *Crawford v. State,* 685 S.W.2d 343, 349–351 (Tex.App.—Amarillo 1984), *PDR* granted and reversal on other grounds affirmed, 696 S.W.2d 903 (Tex.Cr.App.1985).

Thus we have seen the Court move from "identifiable prejudice in the jury box" to "presumptive prejudice" tested by voir dire examination to "judge's choice." In *Bell v. State,* 582 S.W.2d 800 (Tex.Cr.App.1979), it appears to recognize that sort of evolution, and settled on "judge's choice." *Id.,* at 810–811. Also: *Demouchette v. State,* 591 S.W.2d 488, 490 (Tex.Cr.App.1979), and *McManus v. State,* 591 S.W.2d 505, 517–518 (Tex.Cr.App.1979).

Here, however, the majority opinion presents a veritable cornucopia of mixed theories to uphold denial of the motion for change of venue. Pp. 338–339. First off it tells us something that should be selfevident: no juror who served was disqualified from serving on account of pretrial publicity. It notes that "ordinarily" there must

be "actual, identifiable prejudice," yet then sets out the test applied for "presumptive prejudice." It makes some fact findings following the lead of two decisions by the Supreme Court.[5] Finally, the majority purports to apply a "totality of circumstances" test but only says "we totally disagree" with quoted assertions of appellant, again mentions *Bell* and overrules his third ground (point) of error. The majority opinion, curiously, never says appellant "simply failed to demonstrate that the trial court abused its discretion in declining to grant change of venue." See *Bell v. State,* supra, at 811, and cases cited there and *ante.*

In sum, whether it reversed judgments for failure to grant a motion for change of venue, notably Rubenstein alias *Rubenstein v. State,* 407 S.W.2d 793, 795 (Tex.Cr.App.1966), and *Henley v. State,* 576 S.W.2d 66 (Tex.Cr.App.1978), or affirmed an adverse ruling in other cases such as *Bell, Demouchette* and *McManus,* this Court has continued to recognize vitality in the formulation enunciated in *Rideau,* et al. Here the majority fails to elucidate an existing dichotomy of presumptive prejudice and actual, identifiable prejudice, much less explain what ever happened to notions of

---

5. They are *Murphy v. Florida,* 421 U.S. 794, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975), and *Dobbert v. Florida,* 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977).

In *Murphy* the defendant is the notorious "Murph the Surf," and to appreciate what the Supreme Court decided one must understand the issues raised. Because of "extensive press coverage, apparently a motion for a change of venue was filed, heard and denied before trial. After a jury had been selected, defendant moved to dismiss the jurors on the ground that they were aware of one or the other of two prior convictions for theft and murder, respectively. He also renewed his motion for change of venue based on allegedly prejudicial pretrial publicity. Thus his contentions were twofold: the jury was composed of jurors who were not truly impartial and indifferent jurors, relying on *Marshall v. United States,* 360 U.S. 310, 79 S.Ct. 1171, 3 L.Ed.2d 1250 (1959), and their stated indicia of impartiality were overwhelmed by presumptively prejudicial adverse publicity under the principle of *Irvin v. Dowd,* supra, with the judicial gloss of *Rideau, Estes* and *Sheppard,* all supra. 421 U.S., at 796, 798, 95 S.Ct., at 2034–2035. After reviewing the latter cases, the Supreme Court concluded:

They cannot be made to stand for the proposition that juror exposure to information about a state defendant's prior convictions or to news accounts of the crime with which he is charged alone presumptively deprives the defendant of due process. *To resolve this case,* we must turn, therefore, to any indications in the totality of circumstances that petitioner's trial was not fundamentally fair." *Id.,* at 799, 95 S.Ct., at 2036. Unable to discern enough indications the Supreme Court found, "Petitioner has failed to show that the setting of the trial was inherently prejudicial *or* that the jury-selection process of which he complains permits an inference of actual prejudice." Id., at 803, 95 S.Ct., at 2038.

*Dobbert* decided "whether the significant amount of pretrial publicity concerning the crime [charged] deprived petitioner of his right to a fair trial;" the Supreme Court merely made a partial *Murphy* analysis to conclude, "Petitioner has failed to convince us that under the 'totality of circumstances,' *Murphy,* supra, the Florida Supreme Court was wrong in finding no constitutional violation with respect to the pretrial publicity." 432 U.S., at 303, 97 S.Ct., at 2303.

abuse of discretion by the trial court. There is not an edifying exploration of past decisions leading to a clear exposition of what test should be applied to prejudicial pretrial publicity, followed by an application to the circumstances of this cause.[6]

Since, as has been demonstrated, there are problems in identifying which tests remain extant and applicable in particular situations today, the Court should at least make clear that the presumptive prejudice test as articulated in e.g., *Henley,* supra, is still viable in this jurisdiction, and that it does not require "prejudice in the jury box;" but that here, without regard to voir dire exmaination, evidence of adverse pretrial publicity is insufficient to raise it in this cause. Thus as to the merits the only issue is whether there are enough indications in the totality of circumstances to demonstrate actual prejudice such that the trial court should have granted a change of venue. While I believe the majority determines that issue on other than a comprehensive analysis of the circumstances, I agree that the trial court did not err in refusing to change venue.

Therefore, I concur in overruling the third ground (point) of error and join the judgment of the Court.

MILLER, J., joins in this opinion.

---

**6.** Compare the exhaustive examination and analysis of the authorities by Judge Reavley in *Mayola v. State of Alabama,* 623 F.2d 992, at 996–99 (CA 5 1980), which reflects a remarkable prescience of Part II in *Murphy,* supra.