

NUMBER 13-13-00207-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

**JOSE LUIS ALVAREZ,**                                           **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                       **Appellee.**

## On appeal from the 370th District Court
## of Hidalgo County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Benavides and Longoria**
**Memorandum Opinion by Justice Longoria**

A jury found Jose Luis Alvarez guilty of two counts of attempted capital murder of a peace officer, *see* TEX. PENAL CODE ANN. § 15.01(a) (West 2011) ("criminal attempt"); *id.* § 19.03(a)(1) (West Supp. 2013) ("capital murder"), and assessed a $10,000 fine and a fifteen year prison sentence for each count, with the sentences to run concurrently. *See*

*id.* § 12.32(a) (West 2011) ("first degree felony punishment"); *id.* § 15.01(d) (stating that an attempted offense "is one category lower than the offense attempted"); *id.* § 19.03(d) (capital murder is a "capital felony"). The State also charged Alvarez with three counts of aggravated kidnapping for the abduction of Jesus Martin Torres, Felix Garza, Jr., and Juan Jesus Ramos. *See id.* § 20.04(b) (West 2011) ("A person commits an offense if the person intentionally or knowingly abducts another person and uses or exhibits a deadly weapon during the commission of the offense."). The jury found Alvarez guilty of two of the three alleged counts of aggravated kidnapping (i.e., for the abduction of Jesus Martin Torres and Juan Jesus Ramos), and Alvarez received community supervision for a term of ten years for those offenses. Alvarez now appeals his convictions by seven issues in which he contends, *inter alia*, that the evidence was insufficient to support the jury's guilty verdict on the two counts of attempted capital murder, *see Jackson v. Virginia*, 443 U.S. 307, 316 (1979) ("[E]ssential of the due process guaranteed by the Fourteenth Amendment [is] that no person shall be made to suffer the onus of a criminal conviction except upon sufficient proof-defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense."), and that he did not receive a fair and impartial trial due to various errors committed by the trial court. *See Nebraska Press Assn. v. Stuart*, 427 U.S. 539, 551 (1976) ("The Sixth Amendment . . . right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, indifferent jurors. A fair trial in a fair tribunal is a basic requirement of due process.") (quotations omitted). For the reasons set forth below, we overrule Alvarez's issues and affirm the trial court's judgment.

2

## I. SUFFICIENCY OF THE EVIDENCE

In his first and second issues, Alvarez challenges the sufficiency of the evidence to support the jury's guilty verdict on the two counts of attempted capital murder.

### A. Standard of Review

When we review the sufficiency of the evidence to support a verdict under the sufficiency standard set out in *Jackson v. Virginia*, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 307). "This standard accounts for the fact[-]finder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.* (quotations omitted). "[W]e determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Id.* (quotations omitted). "Our review of all of the evidence includes evidence that was properly and improperly admitted." *Id.* "When the record supports conflicting inferences, we presume that the fact[-]finder resolved the conflicts in favor of the prosecution and therefore defer to that determination." *Id.* "Direct and circumstantial evidence are treated equally." *Id.* "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Id.*

### B. Applicable Law

We measure the sufficiency of the evidence by the elements of the offense as defined by a hypothetically correct jury charge. *See Malik v. State*, 953 S.W.2d 234, 240

3

(Tex. Crim. App. 1997). "Such a charge [is] one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009) (quotations omitted).

In relevant part, the Texas Penal Code provides, "A person commits an offense if the person commits murder as defined under Section 19.02(b)(1) and . . . the person murders a peace officer . . . who is acting in the lawful discharge of an official duty and who the person knows is a peace officer . . . ." TEX. PENAL CODE ANN. § 19.03(a)(1). Under Section 19.02(b)(1) of the Texas Penal Code, a person commits the offense of murder "if he . . . intentionally or knowingly causes the death of an individual." *Id.* § 19.02(b)(1) (West 2011). The Texas Penal Code also provides that "[a] person commits an offense if, with specific intent to commit an offense, he does an act amounting to more than mere preparation that tends but fails to effect the commission of the offense intended." *Id.* § 15.01(a).

"A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both." *Id.* § 7.01(a) (West 2011). "A person is criminally responsible for an offense committed by the conduct of another if . . . acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." *Id.* § 7.02(a)(2) (West 2011). "In determining whether the accused participated as a party, the court may look to events occurring before, during and after the commission of the offense, and may rely on actions

4

of the defendant which show an understanding and common design to do the prohibited act." *Ransom v. State*, 920 S.W.3d 288, 302 (Tex. Crim. App. 1994) (en banc) (quotations omitted).

The Texas Penal Code also provides as follows:

> If, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy.

TEX. PENAL CODE ANN. § 7.02(b). The Texas Penal Code provides in relevant part:

> CRIMINAL CONSPIRACY.
>
> (a) A person commits criminal conspiracy if, with intent that a felony be committed:
>
>> (1) he agrees with one or more persons that they or one or more of them engage in conduct that would constitute the offense; and
>>
>> (2) he or one or more of them performs an overt act in pursuance of the agreement.
>
> (b) An agreement constituting a conspiracy may be inferred from acts of the parties.

*Id.* § 15.02(a)–(b) (West 2011).

In this case, the indictment alleged that Alvarez committed two counts of attempted capital murder by "shoot[ing] [Deputy] Hugo Rodriguez with a firearm" and by "shoot[ing] at or in the direction of [Deputy] Manuel Morales [with a firearm] . . . ."[1] Alvarez asserts, and the State agrees, that for purposes of our sufficiency review, the essential elements of the charged offenses are as follows: (1) Alvarez and his coconspirators engaged in "a

---

[1] Although the State did not allege in the indictment that it would prove the two counts of attempted capital murder by the law of parties, "it is well-settled that the law of parties need not be pled in the indictment." *Marable v. State*, 85 S.W.3d 287, 287 (Tex. Crim. App. 2002).

5

conspiracy to commit aggravated kidnapping," (2) "one of the coconspirators committed attempted capital murder" in the course of committing the aggravated kidnapping, (3) "the attempted capital murder was committed in furtherance of the aggravated kidnapping," and (4) "the attempted capital murder was an offense that should have been anticipated as a result of carrying out the conspiracy."

## C. Anticipation of Secondary Felony

In his first issue, Alvarez contends that the evidence is insufficient to prove as to either count of attempted capital murder that he "should have anticipated that a coconspirator would have attempted to kill a police officer during the course of the kidnapping." *See id.* § 7.02(b). Alvarez does not challenge the sufficiency of the evidence to support the jury's finding of guilt on the two counts of aggravated kidnapping. *See id.* § 20.04(b). Furthermore, Alvarez does not dispute that he and his coconspirators engaged in a conspiracy to commit the aggravated kidnappings. *See id.* § 15.02(a)–(b). Instead, Alvarez merely contends that the State failed to prove that either of the offenses of attempted capital murder of a peace officer "was one that should have been anticipated as a result of the carrying out of the conspiracy [to commit aggravated kidnapping]." *Id.* § 7.02(b).

As set forth above, the jury found that Alvarez committed two aggravated kidnappings by using or exhibiting a deadly weapon during the commission of the offenses. *See id.* § 20.04(b). The uncontroverted evidence produced by the State established that during the course of the aggravated kidnappings, Alvarez and one of his coconspirators, Daniel Perez, were detained in a traffic stop by Deputies Rodriguez and Morales of the Hidalgo County Sheriff's Office because the vehicle in which they were

6

traveling matched the description of the vehicle used by the suspects in the aggravated kidnappings, which had been reported to police earlier in the day.

At the time of the traffic stop, Alvarez was driving an extended-cab pickup truck, his coconspirator, Daniel Perez, was in the front passenger seat, and the abducted individuals, Ramos and Torres, were in the vehicle's rear seats bound with duct tape. Perez was armed with at least one firearm, a pistol. A second firearm, an assault rifle with a bayonet, was also located inside the vehicle on the floorboard by the driver's seat. A large knife was located in the backseat. According to Ramos's testimony, at the outset of the traffic stop before the deputies approached the vehicle, Perez told him and Torres "to stay quiet or he was gonna shoot . . . [them]."

Deputy Morales instructed Alvarez to exit the vehicle, and Alvarez complied with the instruction. Deputy Morales escorted Alvarez to the rear of the vehicle and conducted a pat-down search, which uncovered no weapons. Deputy Rodriguez then approached the passenger side door of the truck to interview the other occupants of the vehicle. Perez emerged from the truck firing his pistol at Deputy Rodriguez, who was struck by four of the gunshots. Deputy Morales then saw Perez running towards the rear of the vehicle, where he and Alvarez were standing. Deputy Morales moved to the driver's side of the vehicle. He then saw Alvarez and Perez standing together behind the vehicle. Perez was pointing his pistol at Deputy Morales, who fired three rounds in their direction. Although he was taken down to the ground by Perez's gunshots, Deputy Rodriguez also fired his weapon at Alvarez and Perez at or about the same time that Deputy Morales was firing his weapon. Alvarez ducked behind the truck's tailgate, but he still sustained several gunshot wounds. Perez also sustained several gunshot wounds, one of which

7

was to his head and was fatal. The deputies found Perez lying dead near the roadway. His pistol was still in his hand with his finger on the trigger.

Based on the foregoing, we must decide whether the State proved that Alvarez should have anticipated Perez committing attempted capital murder of two peace officers as a result of the carrying out of the conspiracy to commit aggravated kidnapping. *See id.* § 7.02(b). The Fort Worth Court of Appeals has summarized the relevant case law as follows:

> In virtually all of the Texas cases . . . in which an appellate court has found legally . . . sufficient evidence to uphold a capital murder conviction under the theory of criminal responsibility contained in section 7.02(b), there has been evidence that the appellant was on notice that murder was a possible result of the carrying out of a conspiracy to commit another felony.

*Tippitt v. State*, 41 S.W.3d 316, 323 (Tex. App.—Fort Worth 2001, no pet.) (citing *Fuller v. State*, 827 S.W.2d 919, 932 (Tex. Crim. App. 1992); *Green v. State*, 682 S.W.2d 271, 285–86 (Tex. Crim. App. 1984); *Simmons v. State*, 594 S.W.2d 760, 764 (Tex. Crim. App. 1980); *Ruiz v. State*, 579 S.W.2d 206, 209 (Tex. Crim. App. [Panel Op.] 1979); *Williams v. State*, 974 S.W.2d 324, 330 (Tex. App.—San Antonio 1998, pet. ref'd); *Coleman v. State*, 956 S.W.2d 98, 102 (Tex. App.—Tyler 1997, pet. ref'd); *Queen v. State*, 940 S.W.2d 781, 788 (Tex. App.—Austin 1997, pet. ref'd); *Alvarado v. State*, 816 S.W.2d 792, 796 (Tex. App.—Corpus Christi 1991), *aff'd as modified*, 840 S.W.2d 442 (Tex. Crim. App. 1992); *Naranjo v. State*, 745 S.W.2d 430, 433–34 (Tex. App.—Houston [14th Dist.] 1988, no pet.); *Flores v. State*, 681 S.W.2d 94, 96 (Tex. App.—Houston [14th Dist.] 1984), *aff'd*, 690 S.W.2d 281 (Tex. Crim. App. 1985)).

Last year, the Texas Court of Criminal Appeals held that "a rational jury could find beyond a reasonable doubt that [the] [a]ppellant should have anticipated his co-

conspirator committing aggravated assault of a public servant as a result of carrying out their conspiracy to deliver methamphetamine." *Anderson v. State*, No. PD–0408–12, __ S.W.3d __, 2013 WL 6182427, at *7 (Tex. Crim. App. Nov. 27, 2013). The court reasoned as follows:

> It was reasonable for the jury to infer that Appellant should have anticipated that the police could bust the drug transaction, and reasonable for the jury to infer that Appellant should have anticipated that an officer could be injured while attempting to bust the drug transaction. The evidence supports the jury's finding that Appellant should have anticipated the aggravated assault of a public servant in furtherance of the conspiracy to commit the offense of possession of a controlled substance with intent to deliver.

*Id.* at *6. The court emphasized that "Section 7.02(b) does not require the State to prove that Appellant actually anticipated the secondary felony, only that the crime is one that *should* have been anticipated." *Id.* at *4.

Following this reasoning, we conclude that it was reasonable for the jury to infer that Alvarez should have anticipated that the police could "bust" him and his coconspirators for the aggravated kidnappings, particularly once the deputies had stopped Alvarez and Perez on suspicion that they were in the course of committing the reported kidnappings. *See id.* at *6. According to the testimony of Torres, one of the two victims in the vehicle at the time, both Alvarez and Perez were armed and Perez threatened to "shoot" Torres and the other victim unless they "stay[ed] quiet." From this evidence, it was reasonable for the jury to infer that Alvarez and Perez continued their conspiracy to commit aggravated kidnapping even after they were detained by the deputies. Furthermore, under these circumstances, it was reasonable for the jury to infer that Alvarez should have anticipated that Perez was ready, willing, and able to use deadly force to further the conspiracy by shooting the victims, the deputies, or anyone else who

9

got in his way. In sum, the evidence supports the jury's finding that Alvarez should have anticipated the attempted capital murder of the two peace officers in furtherance of the conspiracy to commit aggravated kidnapping. *See id.* Accordingly, we overrule Alvarez's first issue.

## D. Attempted Capital Murder of Deputy Morales

In his second issue, Alvarez contends that the evidence is "insufficient to prove that the deceased coconspirator . . . attempted to kill Deputy Manuel Morales." As set forth above, the State produced evidence showing that after Perez gunned down Deputy Rodriguez, he ran towards Alvarez and Deputy Morales. After Deputy Morales retreated to the driver's side of the vehicle, Perez pointed his pistol at Deputy Morales; however, Perez was unable to fire a shot because Deputy Morales and Deputy Rodriguez opened fire on Perez before he could pull the trigger. In fact, afterward, Perez's dead body was found with the pistol still in his hand and his finger on the trigger. From this evidence, it was reasonable for the jury to find that Perez committed "an act amounting to more than mere preparation that tends but fails to effect the commission of the offense intended," namely, capital murder. TEX. PENAL CODE ANN. § 15.01(a).

Nevertheless, Alvarez contends that the act of pointing a gun is not an act that amounts to more than mere preparation for the offense of attempted capital murder. He contends that something more is necessary, such as firing the weapon. We disagree. The Texas Court of Criminal Appeals has squarely addressed this issue. S*ee Godsey v. State*, 719 S.W.2d 578, 583 (Tex. Crim. App. 1986) ("Appellant contends that the act of pointing a gun is not an act that amounts to more than mere preparation for the offense of attempted murder. He contends that something more is necessary. We do not

10

agree."). For the reasons stated in *Godsey*, we reject Alvarez's contention. *See id.* ("The only remaining act for the commission of capital murder was for appellant to pull the trigger and hit his target. His actions constituted more than mere preparation."). Accordingly, we overrule Alvarez's second issue.

## II. VOIR DIRE

In his third and fourth issues, Alvarez raises error that purportedly occurred during voir dire.

## A. Relevant Facts

During voir dire the following occurred:

| | |
|---|---|
| [PROSECUTOR]: | Anybody familiar with any of those following -- I guess as -- we know them as cartels? I'm sure everybody has heard about one of them; right, at some time or another? Should there be any testimony -- and this is a double-edged sword -- Should there be any testimony that either of these cartels or a cartel that's not even on there was part of this crime, are you automatically gonna say, "Well, you know, I'm sitting here as a juror. I've heard about these. I think I'm gonna vote 'not guilty' because I don't want any part of this"? |
| | Anybody feel that way in the first row? |
| | Juror Number -- I'm sorry. Your number? |
| PROSPECTIVE JUROR 5: | 5. |
| [PROSECUTOR]: | 5. Okay. |
| | Anybody else? Juror Number 9. |
| | Anybody else in the first row? |
| | Okay. Second row, Juror Number 29. |

11

Anybody else on the second row?

Second row, Juror Number – I'm sorry. Is it -- I should put on my glasses; right?

PROSPECTIVE JUROR 19:    19.

[PROSECUTOR]:    19.  Okay.  Thank you.  And --

PROSPECTIVE JUROR 17:    17.

[PROSECUTOR]:    17.

Third row, Juror Number 31 --

PROSPECTIVE JUROR 37:    37.

[PROSECUTOR]:    37.

Back row, Juror Number – I'm sorry. That's 58 over here.  I'm sorry.  I skipped Juror Number 36 back here in the back. Juror Number 49.  Anybody else?  Did I get everybody?  Juror Number 53.  And Juror Number 34.

All right.  What if I told you then by doing that, you let them win?  Right?  Kind of like this last 45 minutes.  If we, as good citizens -- which you all are here -- then who's gonna put a stop to them?

[DEFENSE COUNSEL]:    Judge, I think he's committing the jury to issues of cartel --

[PROSECUTOR]:    I'll – I'll withdraw the question, Judge, and I'll hit the other end of it.

THE COURT:    Clear it up.

[PROSECUTOR]:    Is there anybody here who's gonna say, "You know what?  If there's any testimony, any evidence that he's part of the cartel" --

12

[DEFENSE COUNSEL]:          Again, Judge --

[PROSECUTOR]:               A cartel --

[DEFENSE COUNSEL]:          Again, Judge, he's committing the jury into that particular area, Judge.

THE COURT:                  Well, let him finish the question first.

[DEFENSE COUNSEL]:          It's not permissible.

[PROSECUTOR]:               Are you gonna automatically find him guilty because of that, and say, "You know what? I hear anything about cartels, any association whatsoever, just the mention of it -- I don't care what the evidence is. I'm finding him guilty because I don't want that here"? Anybody feel that way? And, again, you're entitled to feel that way.

                            First row?

[DEFENSE COUNSEL]:          Judge, again --

THE COURT:                  Your objection is overruled.

[PROSECUTOR]:               First row? Second row? Third row? Juror Number 30 -- I'm sorry -- 34.

PROSPECTIVE JUROR 37:       37.

[PROSECUTOR]:               And Juror Number 37?

PROSPECTIVE JUROR 37:       Yes, sir.

[PROSECUTOR]:               And anybody else? Back here -- Juror Number 48, and Juror Number 46, and Juror Number --

PROSPECTIVE JUROR 20:       20.

[PROSECUTOR]:               20. Anybody else that I missed?

                            Over here on this side?

13

So you all are saying that you cannot be a fair and impartial juror -- and only you all can tell me. Okay?

Only you all can tell me. Those of you -- either way - - that raised your hands that you would convict or you wouldn't convict; are you saying that you --

THE COURT:

Well, let's clear the record. Let's clear the record slightly because I think that . . . [the prosecutor] is -- asked the right questions, but when he's summing it up, then it's gonna be unclear.

Be very, very careful and listen carefully to the question that's being asked. Question first says: Would you automatically do "X" or do "Y", whatever you may decide to do, simply because there is a presentation of evidence that may include the involvement of an organization?

Remember I started off earlier by mentioning that? That's why I was mentioning it. If an organization of this type that has been discussed at this point is involved or is presented, are you automatically going to decide this case simply on that fact? Never mind all of the other evidence that may be presented. Once that's presented, you're gonna find not guilty because you fear or you're going to find someone guilty because you fear, as opposed to listening to all the evidence and deciding the case. And that may be or may not be a factor in the case. But if it is a factor, then you have to be able to follow your oath.

And remember what the oath is going to be – It's slightly different than what you took today as an oath.

14

You're going to be asked to -- a true verdict render in accordance with the evidence presented here and the law that applies to the case that the judge gives you.

So in other words, you have to decide this case on what's presented here, and they have to prove it in accordance with the law. So if they prove the case beyond a reasonable doubt, you find the individual guilty. If they don't prove their case beyond a reasonable doubt, you find the individual not guilty, whether or not there's evidence of any organization being involved one way or the other. Does everybody understand that?

Okay. Now, my understanding is: A number of you testified -- because you're under oath -- you took an oath -- that you would automatically find someone not guilty just because there may be evidence submitted that an organization is involved. And others testified that you would automatically find him guilty because of that, no matter what the evidence was, or whether the State proved their case beyond a reasonable doubt, simply to take that individual off the street and to avoid that whole organization. You see that?

That's what I heard. I heard both sides.

If you feel that way, one way or the other, raise your hand up high. High, high, high. Keep it up. First row? Okay. First row can put them down.

Second row? Second row here? Nobody?

Okay. Third row?

Fourth row?

15

|  |  |
|---|---|
| | Okay. You may put your hands down. |
| PROSPECTIVE JUROR 54: | I have a question. |
| THE COURT: | Sure. |
| PROSPECTIVE JUROR 54: | Has there ever been any retaliation of the jury if there is an organization involved? |
| THE COURT: | If you're asking a question as to whether or not there's ever been a retaliation out of my court, the answer is: No. If you're asking me whether you will be provided protection: All jurors throughout the county, whether you're serving on a criminal case or a civil case, are treated the same. You are provided security. You are provided a safe workplace because you're actually working. You'll be working for the county. And that's all I can tell you. All right? |
| PROSPECTIVE JUROR 8: | I think also -- to add on to her question -- how accessible are our names? |
| THE COURT: | You are Mr. [name of juror]; right? . . . |
| PROSPECTIVE JUROR 8: | To the public. |
| THE COURT: | [Name of juror], . . . I did that on purpose.<br><br>And the reason I did it on purpose is this: Proceedings are public. If you are selected on the jury, the Court is able to protect -- |
| PROSPECTIVE JUROR 8: | Well, no -- |
| THE COURT: | -- identities, addresses, things like that from the general public. But do the defense lawyers, and the State's lawyers, and everyone else involved in the legal process have access to it? Yes. But the general public can be excluded from that information. |

16

Any other questions?

All right. You may proceed.

## B. Commitment Questions

In his third issue, Alvarez contends that the trial court erred in overruling his objection to the State's questions regarding Alvarez's potential connection to the Gulf Cartel. Alvarez argues that the questions were improper commitment questions.

## 1. Applicable Law

"[A]n attorney cannot attempt to bind or commit a prospective juror to a verdict based on a hypothetical set of facts." *Standefer v. State*, 59 S.W.3d 177, 180 (Tex. Crim. App. 2001). "A commitment question is a question that commits a prospective juror to resolve or to refrain from resolving an issue a certain way after learning of a particular fact." *Davis v. State*, 349 S.W.3d 517, 518 (Tex. Crim. App. 2011). The Texas Court of Criminal Appeals has explained as follows:

> These types of questions tend to require a "yes" or "no" answer, in which one or both of the possible answers commits the jury to resolving an issue a certain way. These questions can also ask the venire person to refrain from resolving an issue on the basis of a fact that may be used to resolve the issue, for example, the party could attempt to secure a commitment to refrain from resolving the punishment issues in a capital case on the basis of victim impact evidence. Commitment questions include those questions that ask a prospective juror to set the hypothetical parameters for his or her own decision-making. For example, the following question is a commitment question asking the venire person to explain the parameters of his decision-making: "What circumstances in your opinion warrant the imposition of the death penalty?" Also, commitment questions may contain words such as "consider," "would," and "could."
>
> A commitment question can be proper or improper, depending on whether the question leads to a valid challenge for cause. Commitment questions are improper when (1) the law does not require a commitment or (2) when the question adds facts beyond those necessary to establish a challenge

17

for cause. When the law requires certain types of commitments from jurors, attorneys may ask the prospective jurors whether they can follow the law in that regard. For example, one could ask prospective jurors whether they could follow a law that required them to: disregard illegally obtained evidence; follow instructions requiring corroboration of accomplice witness testimony; consider the full range of punishment available, or follow a law that precludes them from holding against defendant his failure to testify.

*Lydia v. State*, 109 S.W.3d 495, 498 (Tex. Crim. App. 2003) (citations omitted).

The Texas Court of Criminal Appeals has also explained as follows:

One way a question can be relevant is if it seeks to uncover grounds for a challenge for cause. A venire member may be challenged for cause if: (1) he possesses a bias or prejudice in favor of or against the defendant, Tex. Code Crim. Proc. art. 35.16(a)(9); (2) he possesses a bias against a phase of the law upon which the State or the defendant is entitled to rely, Tex. Code Crim. Proc. art. 35.16(b)(3) & (c)(2); or (3) he has already decided the defendant's guilt or punishment, Tex. Code Crim. Proc. art. 35.16(a)(10).

We have also held questions to be proper for the purpose of intelligently exercising peremptory challenges. *See, e.g.*, *Hernandez v. State*, 508 S.W.2d 853, 854 (Tex. Crim. App. 1974). Reliance on this basis provides no meaningful limit on questions to be asked for the intelligent use of peremptory challenges. The more intelligent or effective the question, the more likely it is that the question will commit the venire member to decide the case, or to refrain from deciding the case, on a basis not required by law.

*Barajas v. State*, 93 S.W.3d 36, 39 (Tex. Crim. App. 2002).

## 2. Standard of Review

"The trial court has broad discretion over the process of selecting a jury." *Id.* at 38 (citing *Allridge v. State*, 762 S.W.2d 146, 167 (Tex. Crim. App. 1988)). "The main reason for this is that voir dire could go on forever without reasonable limits." *Id.* (citing *Faulder v. State*, 745 S.W.2d 327, 334 (Tex. Crim. App. 1987)). "We leave to the trial court's discretion the propriety of a particular question and the trial court's discretion will not be disturbed absent an abuse of discretion." *Id.* (citing *Allridge*, 762 S.W.2d at 163; *Faulder*,

18

745 S.W.2d at 334). "A trial court's discretion is abused only when a proper question about a proper area of inquiry is prohibited." *Id.* (citing *Allridge*, 762 S.W.2d at 163).

## 3. Discussion

During voir dire, the State asked whether any of the prospective jurors would decide the case based on Alvarez's alleged connection to the Gulf Cartel regardless of the other evidence presented at trial. As set forth above, the Texas Court of Criminal Appeals has explained that commitment questions include those "that ask a prospective juror to set the hypothetical parameters for his or her own decision-making." *Lydia*, 109 S.W.3d at 498. In this sense, the State's questions about whether any of the prospective jurors would decide the case based on Alvarez's purported connection to the Gulf Cartel regardless of the other evidence were commitment questions because they "ask[ed] the [prospective] jurors how particular facts would influence their deliberations." *Davis*, 349 S.W.3d at 519.

However, the State's questions were not necessarily improper for this reason. In fact, in this instance, the questioning was proper because it was calculated to uncover grounds for a challenge for cause. The State argues, and we agree, that the questions were narrowly tailored to determine whether any of the prospective jurors possessed a bias or prejudice in favor of or against Alvarez, *see* TEX. CODE CRIM. PROC. ANN. art. 35.16(a)(9) (West 2006), or would decide his guilt or innocence based on his alleged connection to the Gulf Cartel. *See id.* art. 35.16(a)(10). Therefore, the questions were not improper. *See Lydia*, 109 S.W.3d at 498 ("A commitment question can be proper or improper, depending on whether the question leads to a valid challenge for cause.").

19

Furthermore, although Alvarez objected to the State's line of questioning, the trial court subsequently asked essentially the same questions without any objection from Alvarez. *See* TEX. R. APP. P. 33.1(a)(1). Moreover, on appeal, Alvarez has not complained about the trial court's questions or accounted for them in his assertion that the error asserted was harmful. Therefore, even if we were to conclude that the trial court erred in overruling Alvarez's objection, the record does not support a conclusion that the error was reversible. *See* TEX. R. APP. P. 44.2(b). Accordingly, we overrule Alvarez's third issue.

## C. Comments by the Trial Court

In his fourth issue, Alvarez contends that the trial court erred in stating that "security would be provided to the jury [because it] . . . was a comment that prejudiced the jurors' minds against [Alvarez] . . . [by] inadvertently communicat[ing] to the jury that [Alvarez] . . . was connected to a dangerous criminal organization and that the jurors would need protection." As set forth above, Alvarez made no objection to this comment when it was made by the trial court. *See* TEX. R. APP. P. 33.1(a); *Unkart v. State*, 400 S.W.3d 94, 99 (Tex. Crim. App. 2013) ("Ordinarily, a complaint regarding an improper judicial comment must be preserved at trial.").

Furthermore, even assuming that the issue was preserved or did not need to be preserved, we disagree that the judge's comment communicated to the jury that they would need protection because Alvarez was connected to a dangerous criminal organization. A fair reading of the transcript reveals that the trial judge addressed the jurors' concerns about safety with great care and thoughtfulness, avoiding any suggestion that Alvarez was connected to the Gulf Cartel or that the jurors' service in this case would

20

require special protection to ensure their safety: "[W]hether you're serving on a criminal case or a civil case, [you] are treated the same. You are provided security. You are provided a safe workplace because you're actually working. You'll be working for the county. And that's all I can tell you." Accordingly, we overrule Alvarez's fourth issue.

## III. EVIDENTIARY RULINGS

In his fifth issue, Alvarez contends that the trial court violated his fundamental right to present witnesses in his defense. *See Washington v. Texas*, 388 U.S. 14, 19 (1967) ("The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law.").

### A. Relevant Facts

Alvarez's complaint concerns the testimony of German Alvarez and Filomena Baez. During their testimony, the trial court sustained certain hearsay objections made by the State. Alvarez's complaint also concerns the testimony he gave during the punishment phase of trial. During his testimony, the trial court sustained a number of hearsay objections made by the State.

### B. Issue on Appeal

In his appellate brief, Alvarez argues in relevant part as follows:

[I]t was clear that the defense was attempting to elicit statements that were made in the furtherance of a conspiracy. These statements were central to

21

the defensive theory that the Defendant committed the offense under duress. The primary evidence for the defense was through the statements of the co-conspirators who threatened him. The trial court shut down the defense and did not allow this crucial evidence into the trial. These statements clearly fell under the hearsay exception of a statement of a co-conspirator and thus were admissible and deprived the Appellant of his right to present a defense.

## C. Applicable Law

"In our criminal justice system, the proponent of evidence ordinarily has the burden of establishing the admissibility of the proffered evidence." *Vinson v. State*, 252 S.W.3d 336, 340 (Tex. Crim. App. 2008). "If no objection is made, the evidence is generally deemed admissible." *Id.* "However, once an objection is made, the proponent must demonstrate that the proffered evidence overcomes the stated objection." *Id.*; *see also Taylor v. State*, 268 S.W.3d 571, 578–79 (Tex. Crim. App. 2008) ("Once the opponent of hearsay evidence makes the proper objection, it becomes the burden of the proponent of the evidence to establish that an exception applies that would make the evidence admissible in spite of its hearsay character.").

## D. Standard of Review

The Texas Court of Criminal Appeals has explained the applicable standard of review as follows:

> In determining whether a trial court erred in admitting or excluding hearsay evidence under . . . the hearsay rule, a reviewing court looks to see whether the trial court clearly abused its discretion; before the reviewing court may reverse the trial court's decision, it must find the trial court's ruling was so clearly wrong as to lie outside the zone within which reasonable people might disagree.

*Taylor*, 268 S.W.3d at 579.

## E. Discussion

22

Alvarez contends that the trial court erred in granting the State's hearsay objections because the testimony at issue fit within the scope of Rule 801(e)(2)(E) of the Texas Rules of Evidence, which states that "[a] statement is not hearsay if . . . [t]he statement is offered against a party and is . . . a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy." TEX. R. EVID. 801(e)(2)(E). We disagree.

First, as a matter of procedural default, Alvarez never attempted to overcome the State's hearsay objections. *See Vinson*, 252 S.W.3d at 340. In each instance in which the trial court sustained the State's hearsay objections, Alvarez failed to assert that the testimony was not hearsay. *See* TEX. R. EVID. 801(d) ("'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."). In fact, in several instances, Alvarez's attorney instructed the witness to answer the question without testifying about what the other person said, thus indicating to the trial court that he agreed with, or at least did not dispute, the State's assertion that the testimony was inadmissible hearsay. *See* TEX. R. EVID. 802.

Second, and more fundamentally, the statements that were excluded by the trial court based on the State's hearsay objections do not fit within the scope of Rule 801(e)(2)(E) of the Texas Rules of Evidence. *See* TEX. R. EVID. 801(e)(2)(E). To fit within the scope of Rule 801(e)(2)(E), the statements had to be offered against a party, in this case, the State, and had to have been made by a coconspirator of the State during the course and in furtherance of a conspiracy. *Id.* In this case, each of the excluded statements was made by one of Alvarez's coconspirators. There was no evidence or assertion that the State was a party to the conspiracy such that the statements would be

23

excluded from the definition of hearsay. *Cf. Hughes v. State*, 4 S.W.3d 1, 6 (Tex. Crim. App. 1999) ("A statement qualifies as an admission by party opponent if it is offered against a party and it is the party's own statement.") (citing TEX. R. EVID. 801(e)(2)). Accordingly, we conclude that the trial court did not abuse its discretion in making these evidentiary rulings. Therefore, we overrule Alvarez's fifth issue.

## IV. CLOSING ARGUMENT

In his sixth issue, Alvarez contends that the trial court erred in overruling his objection to the State's closing argument regarding Alvarez's alleged connection to the Gulf Cartel.

### A. Relevant Facts

During the punishment phase of trial, Alvarez took the stand in his own defense. The State subsequently cross-examined him, and Alvarez denied being a member of the Gulf Cartel. The State persisted in questioning Alvarez about his alleged membership in the Gulf Cartel. The State's questioning of Alvarez sought to establish that he was affiliated with the Gulf Cartel and that the aggravated kidnappings and attempted capital murders of the peace officers that took place in this case were an operation of the Gulf Cartel.

Subsequently, during closing arguments, the prosecutor argued in relevant part as follows:

> Today, the defendant chose to take the stand. You heard his testimony. Defense counsel, at his opening, got up here and told you that he respected you all's verdict, but that's not really what he was doing.
>
> The defendant takes the stand, and he comes up with a story. He remembers calling his wife right after he's shot in the head, supposedly totally injured, and he's dialing on his Blackberry, or hitting speed dial, or whatever with one hand on the Blackberry talking to his wife. But in the

24

video, the version that Noel Herold from Quantico prepared, you can see where Investigator Roel Guajardo is bent over, talking to him, kneeling next to him for a long time. . . . He's talking to Roel Guajardo. And he tells Roel Guajardo that this is part of *El Cartel del Golfo*. That's where that information came from. That only came out because he chose to take the stand. Had he not chosen to take the stand, you wouldn't have heard anything about the *Cartel del Golfo*.

At this point, Alvarez's attorney interrupted: "Objection, Your Honor, as being -- when he responded to that question, he said 'no.' He denied it, Your Honor . . . ." The trial court sustained the objection. Then, there was a discussion off the record, and the prosecutor continued his argument as follows: "Again, you would not have heard about *El Cartel del Golfo*, '*El Comandante*,' or any of that if the defendant had not taken the stand." Again, Alvarez's attorney objected, "Objection, Your Honor. That's self-serving on the part of the prosecutor." The trial court overruled the objection, and the prosecutor continued his closing argument:

> You see, I stayed away from it throughout the guilt/innocence. I didn't bring Roel Guajardo in to testify about that. We tried it straight up. One of the things -- If his life was in danger, if he did this out of pressure, out of threat -- You saw him testify. Serious the whole time. The minute I started questioning him about that, he started laughing, smiling . . . .

Again, counsel for Alvarez objected, "Objection, Your Honor. That was - - That's a mischaracterization of the defendant, Your Honor." The court then ruled, "Your objection is overruled. The jury will determine how they observed the witness. I'm not the fact[-]finder in this case."

**B. Applicable Law**

"The law provides for, and presumes, a fair trial, free from improper argument by the prosecuting attorney." *Long v. State*, 823 S.W.2d 259, 267 (Tex. Crim. App. 1991). "Permissible jury argument generally falls into one of four areas: (1) summation of the

25

evidence; (2) reasonable deduction from the evidence; (3) an answer to the argument of opposing counsel; or (4) a plea for law enforcement." *Berry v. State*, 233 S.W.3d 847, 859 (Tex. Crim. App. 2007). "[C]ounsel is allowed wide latitude in drawing inferences from the evidence so long as the inferences drawn are reasonable, fair, legitimate, and offered in good faith." *Shannon v. State*, 942 S.W.2d 591, 597 (Tex. Crim. App. 1996) (en banc).

## C. Standard of Review

"Error exists when facts not supported by the record are interjected in the argument, but such error is not reversible unless, in light of the record, the argument is extreme or manifestly improper." *Guidry v. State*, 9 S.W.3d 133, 154 (Tex. Crim. App. 1999). "[I]n most cases, if error occurs, . . . an instruction to disregard will cure any error committed." *Shannon*, 942 S.W.2d at 597. "[A] defendant's failure to object to a jury argument or a defendant's failure to pursue to an adverse ruling his objection to a jury argument forfeits his right to complain about the argument on appeal." *Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996).

## D. Discussion

As set forth above, counsel made three different objections to the State's closing argument. The first and most relevant objection was that the prosecutor was interjecting a fact not in evidence. The trial court sustained this objection; however, because Alvarez did not pursue the objection to an adverse ruling, he cannot complain about it on appeal. *See id.* Counsel's second objection was that the prosecutor's argument was "self-serving." This does not comport with the issue raised on appeal, which is that counsel interjected a fact not in evidence. Therefore, it is not properly before us. *See Ibarra v.*

26

*State*, 11 S.W.3d 189, 197 (Tex. Crim. App. 1999) ("Because his trial objection does not comport with the issue raised on appeal, he has preserved nothing for review."). Counsel's third objection was that the prosecutor mischaracterized Alvarez's demeanor on the witness stand. Again, this is different than the issue raised by Alvarez on appeal. Therefore, it is not properly before us. *See id.* Accordingly, we overrule Alvarez's sixth issue.

## V. Cumulative Error

In his seventh issue, Alvarez contends that he was denied a fair and impartial trial by the cumulative harmful effect of the trial court's various errors asserted in this appeal. However, we have addressed each assertion of error raised in this appeal and overruled them for the reasons set forth in this opinion. *See* Tex. R. App. P. 47.1. Accordingly, Alvarez's seventh issue presents nothing further for this Court to decide. *See id.* We therefore overrule Alvarez's seventh issue.

## VI. Conclusion

We affirm the trial court's judgment.


NORA L. LONGORIA
Justice


Do not publish.
Tex. R. App. P. 47.2(b).

Delivered and filed the
13th day of February, 2014.

27